■ TERM INDUSTRIES, INC., Appellant, v ESSBEE ESTATES, INC., Respondent. — Order, Supreme Court, New York County (Kirschenbaum, J.), entered October 7, 1981, unanimously modified, on the law and the facts, to delete therefrom

those provisions directing execution of a bond and mortgage and payment of "the usual and reasonable expenses attendant upon the execution and filing of" the same, as well as any other provisions thereof not included in the stipulation of settlement entered upon the stenographic record at Trial Term, Part II, Supreme Court, New York County, on November 5, 1980, before Honorable Irving Kirschenbaum, Justice Presiding, in this suit, and otherwise affirmed, without costs and without disbursements. Two sisters, Shirley Silfen and Bernice Brendza, each owned one half of the 50 shares of corporate stock consituting entire ownership of defendant-respondent Essbee Estates, Inc. Plaintiff-Appellant Term had been a tenant in the building owned by Essbee and had commenced an action to compel specific performance of a claimed right of first refusal to purchase the building occupied as tenant of the defendant. All of this is of no moment at this juncture, the original issue in suit being now obviated and the subject of controversy having merged into the stipulated settlement agreement itself. In short, there is no occasion, the recorded contract being complete, to look behind it at the negotiations which brought it into being. On November 5, 1980, a stipulation was entered into involving both corporations and the sisters by which the latter sold their shares in Essbee to Term at an agreed price, with a substantial down payment, the balance payable in stated installments over an agreed period, the shares to be held by an escrowee pending complete fulfillment of the payment terms. Agreement of the parties to these terms was noted on the record, and except for certain small mechanical additional details, the full agreement was as stated. It is to be noted that no form of security to the sellers was specified other than the escrow device. The mechanics of closing the transaction were to be set out in "an agreement under the terms of a normal stock sale," using a "Rapkin [sic] and Johnson form." Closing was set for April 21, 1981, and theretofore plaintiff called upon the sellers to carry out their agreement. A rift developed. Brendza had discharged her lawyer in favor of another and had been advised by the new lawyer that her protection under the escrow scheme was insufficient. She was now persuaded that real security could be afforded only by her designation as mortgagee of the realty owned by Essbee, and by a further change in the terms to shorten the over-all payment period to half the agreed time. Silfen had countered her sister's projected change in terms by a motion on April 1 to enforce the stipulation's terms; in a short form order dated April 9, 1981, and entered one week later, the court directed settlement forthwith of an order "directing all parties to fully comply with the stipulation of settlement and setting a closing date for no later than April 21, 1981." The Justice Presiding, "retaining jurisdiction," directed compliance with the stipulation, adding that, "on the failure and default of any party to comply with * * * this order, application may be made * * * for whatever relief may be necessary and proper". At the April 21 meeting, Brendza refused to sign any papers or to transfer her shares. Thereafter, she made a motion to direct the parties to adhere to the stipulation, to which she added an application that the debt to her be secured by addition of the mortgage feature. Silfen had meanwhile, at the closing, transferred her shares as directed, receiving the first payment therefor. However, when the order of the court deciding the motion, the subject of this appeal, was read, it was found to have granted Brendza's application in full, implementing the additional mortgage security, all as requested. This constituted a rewriting of the stipulation, never mentioned in it, and never hinted at in the freewheeling discussion on the record which culminated in adoption by all present of the stipulation. Generally speaking, "[s]tipulations of settlement * * * will not be set aside absent a showing of such good cause as would invalidate a contract" (*Myers v Bernard,* 38 AD2d 619). In the circumstances found, we read "set aside" to mean "will not be departed from". There

was no dissent from any of the stipulation's provisions when it was formed in the courtroom, and it should stand as written. (See *Breitman Iron Works v Rubsamen & Co.*, 55 AD2d 632, 633, app dsmd 42 NY2d 1050.) "The stipulation of settlement, which was definite and complete upon its face, and spread upon the record in open court, constituted a valid and binding contract between plaintiff and the [other parties to it] * * * Equity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain." (*Raphael v Booth Mem. Hosp.*, 67 AD2d 702, 703.) In sum, there is nothing found here whatever of fraud, overreaching, mistake, or any other good cause — nothing but afterthought and change of mind, both by Brendza and Special Term. Thus, there was no basis for the bond and mortgage provisions inserted in the order, and they must be stricken. Concur — Sandler, J. P., Sullivan, Markewich, Lupiano and Asch, JJ.