OPINION OF THE COURT
Ira Gammerman, J.
This is a special proceeding commenced by the Attorney-General, pursuant to Executive Law § 63 (12), which seeks an order permanently enjoining respondent Solil Management Corp. (Solil) from engaging in fraudulent and illegal practices consisting of alleged rent overcharges and directing respondent to make full restitution to injured consumers. The Attorney-General has also instituted an action for specific performance of an assurance of discontinuance, which respondent is alleged to have breached.
In the fall of 1982, the Attorney-General commenced an investigation of Solil’s rental practices. Thereafter, petitioner and respondent entered into an agreement, the assurance of discontinuance dated May 13,1983 (the Assurance). The Assur *768 anee required Solil to calculate and refund rent overcharges and to reduce to lawful levels rents of all rent-stabilized tenants residing in 77 buildings owned by respondent located in New York City, in exchange for the Attorney-General foregoing a statutory proceeding against Solil. Payments to tenants were to be made in accordance with a schedule embodied in the Assurance. Solil paid refunds in excess of $3,000,000 to tenants in 63 buildings prior to April 1, 1984. These payments were based upon the provisions of the Code of the Rent Stabilization Association of New York City, Inc. (Code), which had no Statute of Limitations for such claims, and utilized base dates of 1968 and 1974 for rent calculations. On April 1, 1984, the Omnibus Housing Act of 1983 (L 1983, ch 403) became effective and superseded many of the provisions of the Rent Stabilization Law (Administrative Code of City of New York § YY51-1.0 et seq.) and Code. The Omnibus Housing Act contained a four-year Statute of Limitations on rent overcharge claims. After April 1, 1984, respondent reduced its refund payments to tenants for overcharges applying a four-year Statute of Limitations to those claims. Thus, April 1, 1980, rather than 1968 or 1974 became the base date for the landlord’s computation of rentals. The refunds and rent rollbacks of approximately 880 tenants in 14 buildings were adversely affected by the revised overcharge formula.
Petitioner contends that the post-April 1, 1984 payments to the tenants are not in compliance with the Assurance since they were not calculated from an appropriate base date as defined in the Rent Stabilization Law in force at the time of the execution of the Assurance and that this breach of the Assurance is prima facie evidence of fraudulent and illegal practices under Executive Law § 63 (15) sufficient to warrant the issuance of a permanent injunction to bar such practices. It is also alleged by petitioner that the Assurance is, in reality, a stipulation of settlement, a contract between the parties, and that petitioner is, therefore, entitled to specific performance of its agreement with respondent. In addition, petitioner seeks treble damages from April 1,1984 to date under the Omnibus Housing Act § 14.
Respondent’s arguments can be summarized as follows: (1) The New York State Division of Housing and Community Renewal (DHCR) has exclusive jurisdiction over rent overcharge complaints under the Omnibus Housing Act of 1983, and thqt therefore, the Attorney-General lacks authority to function in this area; (2) the petitioner has not established a violation of Executive Law § 63 (12) in that respondent’s conduct is in accordance with the current Rent Stabilization Law and thus *769 not violative of the Assurance, nor illegal or fraudulent; (3) respondent’s conduct was not in any event persistent or repeated, but rather a single policy decision respecting all apartment rentals that were to be recalculated after April 1, 1984; and (4) the Executive Law does not provide a cause of action for breach of contract seeking specific performance nor does it permit punitive or treble damages.
Respondent’s contention that the Attorney-General lacks jurisdiction to pursue rent overcharges under the Omnibus Housing Act of 1983 is without merit. Under Executive Law § 63 (12), the Attorney-General is given broad authority to investigate and prosecute repeated or persistent illegal acts or fraud. This is an action under that provision and not under the Omnibus Housing Act. Further, the action arises out of an Assurance entered into by the parties pursuant to Executive Law § 63 (15). To the extent that respondent entered into that agreement it waived any objection it might have had to the Attorney-General’s jurisdiction to investigate rent overcharge complaints.
The Omnibus Housing Act does not invest the DHCR with authority to adjudicate persistent or repeated fraud or illegality. The right of the Attorney-General to exercise his powers under Executive Law § 63 (12) over such activities engaged by those who own, operate and manage residential buildings as a business is well established (see, Matter of People v Ackerman, 24 Misc 2d 83; State of New York v Spodex, NYLJ, Mar. 16,1982, p 6, col 2, mod 89 AD2d 835; Matter of Wiener v Abrams, 119 Misc 2d 970). Moreover, there is nothing in the Omnibus Housing Act which prevents or conflicts with the Attorney-General’s enforcement prerogatives. To this extent it appears that the court’s deference to DHCR in State of New York v Winter (NYLJ, Mar. 6, 1985, p 6, col 3) was not statutorily mandated but rather a discretionary declination of jurisdiction. Such procedure is not appropriate here where respondent by executing the Assurance acknowledged the Attorney-General’s interest and jurisdiction in landlord-tenant matters involving repeated and persistent fraudulent or illegal conduct.
Respondent’s contention that no underlying illegality or fraud is presented because its method of dealing with the overcharge claims after April 1, 1984 is in full compliance with the Rent Stabilization Law as amended is likewise without merit.
Respondent maintains that the four-year Statute of Limitations of the Omnibus Housing Act was intended to have a retroactive effect, as can be seen from its grandfathering of only those claims brought prior to the statute’s effective date. Stat *770 utes of Limitation normally operate prospectively. However, where the Legislature clearly shows its intent that the provision should be applied retroactively, the courts will do so. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 51, 59.) Here the Legislature appears to have intended to limit tenants’ rights to maintain proceedings to the four-year period preceding the effective date of the statute. This is not, however, an action by tenants to recover rent overcharges. Rather, it is a proceeding under Executive Law § 63 (12) commenced by the Attorney-General and as previously indicated there is nothing contained in the Omnibus Housing Act that limits the ability of the Attorney-General to pursue his remedial functions under the Executive Law. Further, these are not really new claims of overcharges but settlements that respondent seeks to modify. As such, they do not come within the intended purview of the Omnibus Housing Act’s retroactive Statute of Limitations.
The Assurance, like its Federal counterpart, the consent decree (see, e.g., United States v ITT Cont. Banking Co., 420 US 223), is a stipulation of settlement, which binds the parties. (Cf. Schweber v Berger, 27 AD2d 840; CPLR 2104.) Stipulations of settlement made in writing and subscribed to by the parties will not be set aside or departed from absent a showing of such good cause as would invalidate a contract. (See, Term. Indus, v Essbee Estates, 88 AD2d 823; Myers v Bernard, 38 AD2d 619.) Thus, respondent must establish fraud, duress or mutual mistake to avoid the consequences of the agreement. {See, Term Indus, v Essbee Estates, supra.) No such showing has been made.
The contract here refers to the Rent Stabilization Law and Code, the statutes and regulations in existence at the time of its execution and not some later modification thereof. It is basic that unless a contract provides otherwise, and this one does not, the law in force at the time the agreement is entered into becomes a part of the agreement, for it is presumed that the parties had such law in contemplation when the contract was made and the contract will be construed in light of such law. (See, Dolman v United States Trust Co., 2 NY2d 110.)
The Attorney-General entered into the stipulation on behalf of all the tenants of Solil Management buildings equally. To adopt respondent’s reading of the Assurance would be to allow disparate treatment of similarly situated tenants based solely on the fortuitous circumstance of the place of the buildings’ position on the refund schedule. This is a situation clearly not envisioned by the parties when they entered into the agreement. The schedule was designed as a convenience to Solil. It should *771 not be employed to discriminate against certain of the tenants it was designed to protect.
Indeed, it would appear that the doctrine of equitable estoppel precludes the respondent from interposing a defense based on the Statute of Limitations. The Assurance was negotiated and executed prior to the enactment of the Omnibus Housing Act. The Attorney-General agreed not to commence a proceeding against Solil, which his investigations indicated was warranted under Executive Law § 63 (12), in exchange for Solil’s commitment to correct rent overcharges. The Attorney-General relied on Solil performing its obligations in accordance with the then existing Rent Stabilization Law and no suit was, therefore, brought. Most of Solil’s tenants relied on the Attorney-General’s efforts and the Assurance he obtained to vindicate their rights and did not file claims with the DHCR. Respondent continued to issue notices of refunds to some of the tenants based on old rent stabilization formulations even after the enactment of the Omnibus Housing Act. In fact, such notices were issued as late as April 1, 1984, the effective date of the new statute. It is clear that Solil intentionally waited until after the expiration of the period to assert overcharge claims before it announced its intention to unilaterally apply the new law. Immediately, after April 1, 1984, the date by which all overcharge claims were to have been filed with DHCR, respondent issued new notices recomputing and reducing refunds and rent rollbacks. By first indicating that it would apply the old system of base dating respondent conceded its validity and misled the Attorney-General and the tenants and then by waiting from June 30,1983 until after April 1,1984 to communicate its intention to abrogate the agreement, respondent cut off the possibility of tenants presenting adverse claims to DHCR for the earlier periods.
As the court in Robinson v City of New York (24 AD2d 260, 263) noted:
“the doctrine of equitable estoppel may be applied to preserve the rights of a party who has postponed action in conformity with an agreement with a defendant for a stay of suit. A defendant’s consent to or inducement of the stay or postponement of suit may estop him from urging the Statute of Limitations as a defense. The Legislature has expressly recognized ‘the power of the court to find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitation’. (See General Obligations Law, § 17-103 [formerly Personal Property Law, § 34].) So, generally stated, where the agreement, representations or conduct *772 of a defendant have caused a plaintiff to delay suit on a known cause of action until the Statute of Limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use by the defendant of the statute as a defense. (See 1 Weinstein-Korn-Miller, N.Y. Civ. Prac., par 201.13; 53 C.J.S., Limitations of Actions, § 25; Glus v. Brooklyn Eastern Term., 359 U.S. 231, 232-233; Erbe v. Lincoln Rochester Trust Co., 13 A D 2d 211; Safrin v. Friedman, 27 Misc 2d 687, affd. 277 App. Div. 1138; also, 1961 Report of N.Y. Law Rev. Comm., p. 97; Ann. 130 A.L.R. 8; 24 ALR 2d 1414, and cases cited.)
“The estoppel to plead the statute may arise without the existence of fraud or an intent to deceive. If the agreement, representations or conduct of the defendant were calculated to mislead the plaintiff, and the plaintiff in reliance thereon failed to sue in time, this is enough. Under these circumstances, the doctrine of equitable estoppel will be applied to prevent defendant from gaining an unconscionable advantage if they were permitted to plead the statute; and it is immaterial that defendant intended no wrong. (See 21 N.Y. Jur., Estoppel, § 24; 31 C.J.S., Estoppel, § 69, and cases cited; Ann. 130 A.L.R., 49, supra; 24 ALR 2d 1435, and cases cited.)”
All elements necessary for an equitable estoppel are presented, a delay in proceeding based on a written agreement, with a course of conduct by respondent calculated to mislead petitioner and the parties he represents. Respondent’s belated reliance on the four-year Statute of Limitations in the Omnibus Housing Act is inequitable and will afford no protection from suit.
Under Executive Law §63 (12) the Attorney-General may bring an action for an injunction or damages to remedy repeated fraud or illegality. (See, Matter of Lefkowitz v E.F.G. Baby Prods. Co., 40 AD2d 364; Matter of Lefkowitz v Burden, 22 AD2d 881; Matter of Wiener v Abrams, 119 Misc 2d 970, supra.) The definition of fraud under this section is extremely broad and includes acts which may be characterized as dishonest and misleading. (See, Matter of Prudential Adv. v Attorney-General of State of N. Y., 22 AD2d 737.) Proof of scienter is not necessary (see, Matter of Lefkowitz v Bull Inv. Group, 46 AD2d 25), since the purpose of such restrictions on commercial activity is to afford the consuming public protection from deceptive and misleading practices. (See, Matter of Allstate Ins. Co. v Foschio, 93 AD2d 328.) Since the respondents delayed application of the Omnibus Housing Act Statute of Limitations to these rent overcharges was itself a misleading practice, the presumption of *773 Executive Law § 63 (15), which makes breach of Assurance prima facie evidence of fraud and illegality, stands confirmed rather than rebutted as respondent maintains.
Respondent asserts that the decision to make refunds based on the four-year Statute of Limitations was a single policy decision and not repeated conduct for purposes of Executive Law § 63 (12), relying on Matter of State of New York v Bel Fior Hotel (74 AD2d 692) and Matter of State of New York v Italian Line (43 NY2d 851). Subsequent to the Italian Line decision the Legislature amended section 63 (12) to define repeated conduct as any separate and distinct fraudulent or illegal conduct or act which affects more than one person. (See, State of New York v Wolowitz, 96 AD2d 47; see, memorandum of Attorney-General, 1981 NY Legis Ann, at 261.)
Respondent’s argument that the Attorney-General is not authorized to sue for breach of contract seeking specific performance under Executive Law § 63 (12) is also without merit. The Attorney-General under section 63 (12) has the remedies of injunction, restitution and damages all available. Although a suit for breach of contract is not explicitly sanctioned, the right to enter into an Assurance under Executive Law § 63 (15) would be hollow if it did not include the power to compel performance of the agreement. Such power is encompassed in the injunctive remedy. An injunction may be used to either restrain or to compel performance of an act. (See, 7A Weinstein-Korn-Miller, NY Civ Prac H 6301.06; 28 NY Jur, Injunctions, §§ 1, 5.) The affirmative or mandatory injunction permitted under Executive Law § 63 (12) may be utilized to accomplish the purpose of specific performance of the Assurance by requiring respondent to perform in accordance with the agreement.
Petitioner, however, is not entitled to punitive damages or treble damages, or both, from respondent. Executive Law § 63 (12) does not provide for either of these extraordinary remedies and petitioner is limited to obtaining restitution or compensatory damages on behalf of the injured tenants. (See, Matter of State of New York v Hotel Waldorf-Astoria Corp., 67 Misc 2d 90, 92; memorandum of Attorney-General, 1977 NY Legis Ann, at 194.) Under the Omnibus Housing Act the injured parties themselves may seek treble damages for rent overcharges incurred after April 1, 1984 before the DHCR.
Based upon the foregoing, the court finds that the respondent engaged in repeated and persistent fraudulent and illegal conduct by not adhering to the Assurance. The Attorney-General is entitled to an injunction requiring the respondent to specifically *774 perform its obligations under said Assurance and directing respondent to recalculate rentals on all tenants covered by said Assurance utilizing base dates of 1968 or 1974, respectively, and to refund sums due, plus interest and to roll back rents to appropriate levels.