McCann v Ship Wrecked Bar & Grill, Inc. (2025 NY Slip Op 03388)

McCann v Ship Wrecked Bar & Grill, Inc.

2025 NY Slip Op 03388

Decided on June 05, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 05, 2025

Before: Renwick, P.J., Kapnick, Mendez, Pitt-Burke, Michael, JJ. 

Index No. 151982/19|Appeal No. 4541|Case No. 2024-05726|

[*1]Leila McCann, Plaintiff-Appellant,
v
Ship Wrecked Bar and Grill, Inc. Doing Business as Wicked Willy's et al., Defendants-Respondents.

Offit Kurman, PA, New York (Daniel J. Schneider of counsel), for appellant.
Robert A. Chapnick, White Plains, for respondents.

Order, Supreme Court, New York County (Lori S. Sattler, J.), entered August 26, 2024, which denied plaintiff's motion for judgment pursuant to CPLR 3215(i), unanimously reversed, on the law, with costs, the motion granted to the extent of granting plaintiff judgment against defendants in the sum of $150,000, with interest from November 1, 2016, less any payments made pursuant to the parties' stipulation of settlement (but not including attorneys' fees), and the matter remanded for calculation of said sum.
Although defendants did not and could not have cross-appealed, they may argue that (1) the attorney (Daniel Schneider) acting on behalf of plaintiff at the time she made motion sequence no. 6 lacked standing to do so and that (2) the court properly denied motion sequence no. 6 based on its denials of motion sequence nos. 4 and 5. They may properly raise these arguments as an alternative basis for affirmance of the order which
denied plaintiff's motion for judgment pursuant to CPLR 3215(i) (see e.g. Grate v Rodrigues, 179 AD3d 440, 441 [1st Dept 2020]). Nonetheless, these arguments have little merit.
Under the circumstances of this case, the technical failure to comply with the formal requisites for substitution of counsel under CPLR 321(b) should not nullify the actions taken by new counsel who moved for judgment pursuant to CPLR 3215(i) (see Diamadopolis v Balfour, 152 AD2d 532, 533-534 [2d Dept 1989]). By cross-moving to withdraw, plaintiff's prior counsel (Jared Lefkowitz) made it clear that he no longer wished to participate in this case. Thus, there was no risk of disruption of orderly procedure. Similarly, there was no risk that defendants would be "unfairly whipsaw[ed]" between Mr. Lefkowitz and Mr. Schneider (Wehringer v Gibbons-Hollyday & Ives, 49 AD2d 109, 112 [1st Dept 1975], lv dismissed 38 NY2d 919 [1976]). In addition, defendants knew as early as December 6, 2023 that Mr. Schneider was acting on behalf of plaintiff. Defense counsel wrote to the court on December 11, 2023 and twice on January 23, 2024 but did not object to Mr. Schneider's appearance.
We reject defendants' contention that the motion on appeal (sequence 6) was properly denied due to the court's prior denial of motion sequences 4 and 5 and plaintiff's failure to appeal therefrom. The orders on motion sequence nos. 4 and 5 did not reach the merits of plaintiff's contention that defendants had failed to strictly comply with the stipulation of settlement, as required by the language of that contract. The order on motion sequence no. 4 merely deemed the motion resolved in light of the discontinuance of the action, and the order on motion sequence no. 5 denied plaintiff's motion for reargument. It is well settled that "[a]n order denying a motion for reargument is not appealable" (Wehringer, 49 AD2d at 111).
On the merits, we find that the court improperly denied plaintiff's motion for judgment pursuant to CPLR 3215(i), in finding that (1) defendants complied with [*2]the stipulation by merely establishing weekly recurring payments through their bank and that (2) an error on the part of defendants' bank was not a basis for finding that they were in default. The stipulation does not simply state, "Defendants shall set up recurring payments with their bank so that the weekly payments are made and received automatically by Plaintiff"; it also provides, "In the event of a missed payment it is the responsibility of Defendants to make the payment during the Cure Period."
"Clear, complete, and unambiguous contractual terms are to be enforced according to their plain meaning" (Iberdrola Energy Projects v Oaktree Capital Mgt., L.P., 231 AD3d 33, 40 [1st Dept 2024]). The stipulation defines "Cure Period" as three business days. Even if one accepts defendants' version — that the missed payments were paid on August 28, 2023, as opposed to September 25 — August 28 was more than three business days after August 21 (the second missed payment) and certainly more than three business days after August 14 (the first missed payment).
Defendants' contention that plaintiff waived their default by continuing to accept payments is unavailing. "Waiver is an intentional relinquishment of a known right and should not be lightly presumed" (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 968 [1988]). Plaintiff clearly did not intend to relinquish her rights under the stipulation of settlement; on September 8, 2023 — promptly after the missed August 14 and 21 payments — she moved for the amount provided for in the stipulation upon defendants' failure to strictly comply therewith. She tried again on October 6, 2023 and in December 2023. The fact that the stipulation provides that the amount payable by defendants is "150,000, . . . less any payments made," indicates that accepting payments does not prevent plaintiff from recovering more than the $57,500 that she would have received if defendants had strictly complied with the stipulation.
Nor do we find any merit to defendants' contention that the relief sought by plaintiff is unconscionable. "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made" (Gilman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988]). Neither element has been satisfied here.
Defendants cite no precedent showing that the stipulation was unconscionable, i.e., they lacked a "meaningful choice" (id. [internal quotation marks omitted]) or that the "contract terms . . . [we]re unreasonably favorable to [plaintiff]" (id. [internal quotation marks omitted]). "Equity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain" (Term Indus. v Essbee Estates, 88 AD2d 823, 825 [1st Dept 1982] [internal quotation marks omitted]).
For the foregoing reasons, plaintiff's motion for a judgment pursuant to CPLR 3215(i), should have been granted[*3], which entitled her to the sum of $150,000, with interest from November 1, 2016, less any payments made pursuant to the parties' stipulation of settlement. However, we reject plaintiff's contention that she is entitled to reasonable attorneys' fees. The stipulation says, "Any costs, fees, and expenses incurred by Plaintiff in enforcing . . . [the] judgment, including . . . reasonable attorney's fees, shall be paid by Defendants." It does not state, "any costs, fees, and expenses incurred by Plaintiff in" obtaining the judgment, nor does it state, "any costs, fees, and expenses incurred by Plaintiff in" enforcing the stipulation. It is axiomatic that "[c]lear, complete, and unambiguous contractual terms are to be enforced according to their plain meaning" (Iberdrola, 231 AD3d at 40).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 5, 2025