OPINION OF THE COURT
Gilbert Ramirez, J.
Plaintiff, the City of New York (City), brings this action for permanent injunctive relief, imposition of civil penalties, and *650 compensatory and punitive damages against the defendants[1] because of the creation and continuance of a public and common-law nuisance at premises 582 Pacific Street, Brooklyn, New York (the Premises).[2] The nuisance arises from the fact that the premises have been used for the purposes of prostitution.[3]
HISTORY
In November 1983 City commenced an action seeking similar relief. Thereafter, in July 1984 a consent order was entered by another Justice of this court which permanently enjoined the defendants in that action, including defendant Taliaferrow, from "using, maintaining or permitting the use of the * * * [Premises] for the purposes of prostitution or any other nuisance as defined by the New York City Administrative Code”.
On May 22, 1985 this court entered a stay in granting the same relief. In addition, Taliaferrow was required to sell the premises to a "legal purchaser” who would not continue with the offensive activity thereat.
Despite all of the above, it was City’s contention that the defendants continued to use 582 Pacific Street and the adjoining area for purposes of prostitution. It, therefore, sought a judgment for civil and criminal contempt against Taliaferrow for a violation of this court’s May 22nd order. In addition, City commenced the current nuisance abatement action in December 1986 seeking not only an injunction but also civil penalties under the Administrative Code and for compensatory and punitive damages under the common law.
The first hearing on the new matter commenced on April 16, 1987. At that hearing it was brought out that there had been convictions for prostitution under Penal Law article 230 on more than one occasion for acts occurring at the Premises during and after 1985.
A second hearing on May 8, 1987 resulted in an order *651 enjoining the operation and maintenance of the Premises for the purpose of prostitution and appointing a temporary receiver for the Premises.
The nonjury trial continued through July 1988. Plaintiffs produced 17 witnesses and introduced 49 documents into evidence. The court makes the following findings of fact:
The Premises have been used for purposes of prostitution for a period of several years. While nothing will be gained by detailing each and every act involved, a random narrative of the activity leading to this conclusion follows:
On March 3, 1985 one Kathleen Carrington was arrested for prostitution within the Premises and pleaded guilty to the charge thereafter.
On June 26, 1985 one Anna Hernandez was arrested for an act of prostitution committed within the Premises. She subsequently pleaded guilty to the charge.
On October 10, 1986 Cassandra Boynton was arrested and charged with prostitution. She later pleaded guilty. On October 10, 1986 defendant Taliaferrow himself had admitted Boynton and one Kathleen Carrington each accompanied by an undercover police officer. Boynton was arrested for and pleaded guilty to prostitution. After a trial defendant Taliaferrow was convicted of promoting prostitution at 582 Pacific because of the October 10 incident.
In addition to these specific acts, there was credible testimony to the effect that the general reputation of the Premises in 1987 was that it was used for prostitution. The building manager of the Brooklyn Academy of Music testified to that fact as did several other individuals including one James MacArther. One witness testified that he had personally been "solicited” by the women known to him to frequent the Premises. A security guard at the nearby Brooklyn Public Library testified that he also was personally "accosted” by some of the "regulars” at the Premises who have become familiar to him. A plainclothes policeman, Marlon Mountcastle, related that on May 11, 1986, when he approached the Premises, a female who was in front of the building offered to "have sex” with him for money. She led him to a room in the Premises. Mountcastle arrested the woman, and she later pleaded guilty to a charge of prostitution. This same woman, one Anna Williams, was convicted three additional times of loitering for purposes of prostitution and once for disorderly conduct. Further testimony presented is merely cumulative in *652 regard to a finding that the Premises was being operated by defendants for the purpose of prostitution.
THE LAW
Administrative Code § C16-2.2 (now § 7-703) provides: "The following are declared to be public nuisances: (a) Any building, erection or place, including one-or two-family dwellings, used for the purpose of prostitution as defined in section 230.00 of the penal law. Two or more criminal convictions of persons for acts of prostitution in the building, erection or place, including one-or two-family dwellings, within the one-year period preceding the commencement of an action under this title, shall be presumptive evidence that the building, erection or place, including one-or two-family dwellings, is a public nuisance.”
The current action was commenced in December 1985, and there were at least two convictions of persons for acts of prostitution in the Premises within the one-year period preceding the lawsuit.[4]
[5]Thus, we have a public nuisance established.
To prove a public nuisance under Public Health Law § 2320 plaintiff has the burden of proving " 'a consistent pattern of conduct sufficient to prove that the premises are being employed for a proscribed use’ ” (People ex rel. Arcara v Cloud Books, 65 NY2d 324, 331 [1985]). Plaintiff’s point that the consistent pattern of conduct is established by the "habitual use” of the premises by "a few prostitutes” is well taken. We find that the significant factors outlined by the court in Arcara, i.e., frequency of conduct, knowledge by the defendant of its existence and the benefit derived by defendant, do establish the consistent pattern required under Arcara.[5] Although not binding on this court, we take note of the standard applied by the Supreme Court of Washington in dealing with abatement of houses of prostitution. In State ex rel. Carroll v Gatter (43 Wash 2d 153, 160, 260 P2d 360, 364) that State’s highest court said: "It [the abatement statute] is directed to the abatement of premises which, by reason of sufficient *653 happenings therein, have absorbed and taken the character of the acts committed, and have in fact become houses of lewdness, assignation or prostitution.” The activities at the Premises fall quite neatly into this description of the activity described in Carroll and proscribed by Public Health Law article 23.
Lastly, to establish the presence of a common-law nuisance one need only show that the premises in question has been used for prostitution. (Commissioner of Dept. of Bldgs. v Sidne Enters., 90 Misc 2d 386; Copart Indus. v Consolidated Edison Co., 41 NY2d 564.)
RELIEF GRANTED
In view of our finding that the plaintiff has established its burden of proving the existence of a public nuisance here, the court grants a permanent injunction against the continuance of the activities in question and continues the formerly ordered receivership.
In determining the measure of any civil penalties to be imposed we turn to the statutory test for imposing such penalties. Section C16-2.5 (h) (now § 7-706 [h]) of the Code provides that if "a finding is made that defendant has intentionally conducted, maintained, or permitted a public nuisance defined in this title, a penalty, to be included in the judgment, may be awarded in an amount not to exceed one thousand dollars for each day it is found that the defendant intentionally conducted, maintained or permitted the public nuisance.”
The statute provides in addition that if evidence of the general reputation of the building, or of the inmates or occupants thereof, is sufficient to establish the existence of the public nuisance, it shall be prima facie evidence of knowledge thereof and acquiescence and participation therein and responsibility for the nuisance, on the part of the owners, lessors, lessees and all those in possession of or having charge of, as agent or otherwise, or having any interest in any form in the property, real or personal, used in conducting or maintaining the public nuisance.
Since we have found that the evidence of the general reputation of the Premises (and some of the inmates or occupants thereof) "is sufficient to establish the existence of the public nuisance”, the imposition of civil penalties against defendant Taliaferrow is appropriate. Unfortunately, we have little guidance in the way of relevant penalties for violation of *654 these particular statutes. It appears that plaintiff is correct in the declaration that there are only two reported decisions in which a nuisance abatement action flowing from prostitution proceeded to trial and a final judgment. The statute relied upon in one did not provide for civil penalties (People v Morbel Realty Corp., 87 Misc 2d 989), and in the other the court found no arrests for prostitution and thus denied the request for civil penalties (People ex rel. City of New York v Macbeth Realty Corp., 100 Misc 2d 926). This, of course, is not the case here. We have a multitude of arrests involving prostitution and promotion of prostitution not to mention disorderly conduct. On two occasions, the evidence reveals that defendant himself participated in the promotion of prostitution, and accordingly the maximum fine of $1,000 is levied for each of these two days. In arriving at a determination of additional civil penalties we use the period from March 3, 1985 until the commencement of this action on December 30, 1986.[6] This gives us a period of 667 days. We assess a civil penalty of $100 for each of those days making a total civil penalty of $68,700.
In regard to the question of compensatory and punitive damages, such an award may be made without fault where a public nuisance has been found. (State of New York v Schenectady Chems., 117 Misc 2d 960.) Since the evidence does not reveal the presence of compensatory damages that are appropriate here, we award the nominal sum of $1. However, this nominal award does not preclude the imposition of punitive damages if appropriate. (Hartford Acc. & Indem. Co. v Village of Hempstead, 48 NY2d 218.) The court finds punitive damages in the. sum of $100,000. In arriving at this figure we adopt the language employed in plaintiff's posttrial memorandum, i.e., "In this action Taliaferrow’s moral culpability and malicious intent are established by his direct, personal promotion of prostitution at 582 Pacific Street in the face of multiple injunctions from this Court, to which Taliaferrow cynically consented.” We also take into account this court’s previous direction to defendant to transfer the Premises to a party who would not continue with the offensive activities thereat. It now appears that the transfer to May Belle Mayes with the solo consideration being a purchase-money mortgage for the total purchase, price was a transparent sham in complete *655 disregard of this court’s mandate.[7] By imposing this sum, we seek not only to punish defendant Taliaferrow for his notorious and willful wrongdoing, but also to "deter others who might otherwise be tempted from indulging in similar conduct in the future.” (Walker v Sheldon, 10 NY2d 401.) We, of course, hope that our decision here will serve to remove this scourge from the community once and for all.

. The defendants include the owners and managing agents of the subject premises.

. The action is brought pursuant to Administrative Code of the City of New York §§ C16-2.3 and C16-2.5 and Public Health Law §§ 2320 and 2329. The Administrative Code sections have been recodified as section 7-701 et seq.

. Pursuant to Administrative Code § C16-2.2 (a) any building used for the purposes of prostitution as defined in section 230.00 of the Penal Law is a public nuisance.

. Anna Hernandez in 1985 and Cassandra Boynton in 1986. These two convictions of course are not inclusive.

. E.g., Pat Sellers was involved in prostitution from March of 1983 through June 1988. Marilyn Toney had a history of prostitution inside the Premises back in 1982 and was frequenting the Premises as late as 1988. Further, on more than one occasion, one or more of the defendants was actively involved in the proscribed activity.

. These dates encompass the period from the arrest and conviction of Kathleen Carrington for prostitution in March 1985 through the commencement of the current action. During this period, at least, the public nuisance being enjoined was maintained and permitted.

. It appears that Taliaferrow never collected on this mortgage and continued to pay bills for the Premises.