UNITED STATES of America, the State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION, et al., Defendants.

No. CIV–79–990C.

United States District Court, W.D. New York.

Oct. 2, 1990.

Piper & Marbury (Thomas H. Truitt and Steven K. Yablonski, of counsel), Washington, D.C., for defendant Occidental Chemical Corp.

Robert Abrams, Atty. Gen., State of N.Y. (Eugene Martin–Leff and Robert E. Hernan, Asst. Attys. Gen., of counsel), New York City, for plaintiff State of N.Y.

CURTIN, District Judge.

### BACKGROUND

Among the forms of relief it requests in its amended complaint, plaintiff State of New York ("State") seeks $250 million in punitive damages on its common-law public-nuisance claims. The State contends that such an award is warranted in light of what it describes as the role of defendant Occidental Chemical Corporation ("OCC") in the creation of "the public health and environmental disaster at Love Canal." Item 142 at ¶ 1. OCC has moved under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure to dismiss the State's punitive-damages claim for failure to state a claim upon which relief may be granted, or, in the alternative, for partial summary judgment denying the punitive-damages claim. OCC argues that the State's claim for punitive damages is not cognizable un-

der New York law, and that, in any event, the claim violates both the United States Constitution and the New York State Constitution. For purposes of its motion, OCC concedes the truth of the facts alleged by the State in its amended complaint. *See* Item 867 at 2.

## DISCUSSION

I. *New York Statutory and Common Law*

a) *New York Penal Law § 240.45(1)*

▉ Beginning with the premise that "punitive damages are punishment" and that "New York law does not permit the State to inflict punishment for a public nuisance offense outside of the criminal context," Item 867 at 4, OCC argues that § 240.45 of the New York Penal Law supplies the only "punishment" authorized for a "public-nuisance offense" of the type alleged here. *See* Item 867 at 4–12, 17–18. That statute provides in relevant part that a person is guilty of criminal nuisance in the second degree when "[b]y conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons." N.Y.PENAL LAW § 240.45(1) (McKinney 1989). Criminal nuisance in the second degree is classified under New York law as a class "B" misdemeanor, the maximum punishment for which a corporation can be fined up to two thousand dollars. *See* N.Y.PENAL LAW §§ 60.25, 80.10(1)(c) (McKinney 1987); *People v. L.A. Witherill, Inc.*, 29 N.Y.2d 446, 328 N.Y.S.2d 668, 671, 278 N.E.2d 905, (1972).[1]

In arguing that such a fine is the maximum punishment to which it can be exposed, OCC points to portions of the legislative history of the 1881 predecessor statute of § 240.45(1), as well as to related sections of the 1881 Penal Code, indicating that the original criminal-nuisance statute[2] was part of a comprehensive criminal code intended to supplant and to replace "all pre-existing authority, including common law authority, for criminal prosecution," as well as to bar "any other form of non-statutory punishment by the State." Item 867 at 5–6.

Specifically, OCC cites the report drafted by the commissioners of the 1881 Code, which provided that one of the objects of the proposed code was "[t]o bring within the compass of a single volume the whole body of the law of crimes and punishments in force within this state." *The Penal Code of the State of New York*, Report of the Commissioners of the Code at iii (1865). OCC also notes that the code, which provided that "[n]o act or omission begun after the ... day on which this Code takes effect ... shall be deemed criminal or punishable, except as prescribed or authorized by this Code, or by some statute of this state not repealed by it," N.Y.PENAL CODE § 2 (Banks & Bros. 1881), was intended to abolish all common-law offenses. *See The Penal Code of the State of New York*, Report of the Commissioners of the Code, Comments to Draft Penal Code § 2 (1865). In addition, the code provided that "[a]n offense specified in this Code, committed after the ... day when this Code takes effect, must be punished according to the provisions of this Code, and not otherwise."

---

1. Alternatively, a corporation can be fined up to twice the amount of its gain from the commission of an offense. *See* PENAL LAW § 80.10(1)(e) (McKinney 1987).

2. The 1881 Penal Code defined "public nuisance" as follows:

A public nuisance is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission:
1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or

2. Offends public decency; or
3. Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, a lake, or a navigable river, bay, stream, canal or basin, or a public park, square, street or highway; or
4. In any way renders a considerable number of persons insecure in life, or the use of property.
N.Y.PENAL CODE § 385 (Banks & Bros. 1881).

N.Y.PENAL CODE § 719 (Banks & Bros. 1881). According to OCC, the "exclusivity" of this statutory scheme continues in the revised Penal Law, § 5.05 of which provides in relevant part:

    1. The provisions of this chapter shall govern the construction of and punishment for any offense defined in this chapter and committed after the effective date hereof ....

    2. Unless otherwise expressly provided, or unless the context otherwise requires, the provisions of this chapter shall govern the construction of and punishment for any offense defined outside of this chapter and committed after the effective date thereof ....

N.Y. PENAL LAW § 5.05(1), (2) (McKinney 1987). *See* Item 867 at 7.

OCC maintains that "[a]lthough sought in the context of a civil action, the punitive damages claimed by the State are, in substance, criminal fines," *id.* at 8, and that State-sought punitive damages "constitute punishment and are to be treated like crimi-

nal sanctions." Item 896 at 2. OCC thus contends, in essence, that the State's claim for punitive damages is tantamount to a criminal prosecution[3] and, consequently, cannot be pursued in a civil proceeding.

OCC does not claim that § 240.45(1) precludes a private party from seeking punitive damages in a public-nuisance action, or the State from seeking compensatory damages in a public-nuisance action. Nor does OCC claim, other than a brief and vague suggestion otherwise, *see* Item 896 at 3 n. 2, that the statute prevents the State from seeking punitive damages in a civil cause of action other than one sounding in public nuisance. Rather, OCC only contends that the criminal-nuisance statute forbids the State from recovering punitive damages in a public-nuisance action. For its part, the State does not contest that the Penal Law is the exclusive criminal remedy for public nuisance, or that there no longer are any common-law crimes that can be prosecuted. Rather, the State argues that, since puni-

---

**3.** This theme runs throughout both OCC's statutory and constitutional arguments. For example, OCC argues: "Through this claim, the State seeks to inflict punishment outside the regime of criminal prosecution," Item 867 at 2, 3; "the State seeks inappropriately to bypass the constitutional protections applicable to such quasi-criminal proceedings as its claim for punitive damages," *id.* at 3; "punitive damages are a form of punishment and ... New York law does not permit the State to inflict punishment for a public nuisance offense outside of the criminal context," *id.* at 4; "[a]lthough sought in the context of a civil action, the punitive damages claimed by the State are, in substance, criminal fines. They are punishment, and as such, may not be granted to the State under the guise of a civil proceeding," *id.* at 8–9 (footnote omitted); "where punitive damages are sought against a corporation by the State, the sanction is indistinguishable from the criminal law," *id.* at 9; "punitive damages serve the same purposes—punishment and deterrence—as the criminal law," *id.;* "this Court should be hesitant to construe expansively the State's authority under State law to impose punishment outside the regime of criminal prosecution," *id.* at 12; "the only legitimate purpose the State might have for pursuing ... punitive damages is punishment for punishment's sake alone. However, in New York, in the context of a criminal action, '[t]here is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution,'" *id.* at 23 (citation omitted); "the State[ ] attempt[s] to inflict offi-

cial punishment under the guise of a civil proceeding," *id.* at 24; "where the State itself brings and controls an action and seeks to punish by recovering penalties for its own benefit, the analogy to overtly criminal prosecution is nearly exact," *id.* at 28; "[t]he claim for punitive damages by the State ... is more closely aligned with criminal prosecution than would be a private claim for punitive damages and therefore should be judged under the more demanding vagueness standard applied to the criminal law," *id.* at 29; "the State's claim for punitive damages is more nearly analogous to criminal prosecution than to ordinary civil litigation," and, therefore, should be subjected to "the constitutionally required procedures for criminal prosecution," *id.;* "the State's claim is essentially criminal in nature," *id.* at n. 24; "a claim for punitive damages by the State itself is closely analogous to criminal prosecution," *id.* at 32; "a close analogy [exists] between punitive damages and criminal prosecution especially where the damages are sought by the State itself," *id.* at 33; "[t]he purposes of punitive damages in New York, when sought by the State, leads to one conclusion—they constitute punishment and are to be treated like criminal sanctions," Item 896 at 12; "[t]he State's claim for punitive damages has no remedial component and is indistinguishable from criminal punishment," *id.* at 20; and "when the *State* is the plaintiff, suing in its prosecutorial capacity, the [punitive-damages] sanction clearly falls on the criminal side of the spectrum for purposes of constitutional scrutiny." *Id.* at 33 n. 25 (emphasis supplied).

tive damages are not a criminal sanction, the Penal Law does not bar their recovery by the State.

The court finds OCC's arguments unpersuasive. Contrary to OCC's claim, the court would not have to construe "expansively" the State's authority to "impose punishment" in order to allow the State to proceed to trial with its punitive-damages claim. *See* Item 867 at 12. The common-law civil action of public nuisance has coexisted with the crime of public nuisance since the sixteenth century, *see* RESTATEMENT (SECOND) OF TORTS § 821B comment a (1977), and OCC has cited no authority establishing that the State could not recover punitive damages in a public-nuisance action prior to the passage of the 1881 Penal Code. Moreover, the 1881 Code provided:

> The provisions of this Code are not to be deemed to affect any civil rights or remedies existing at the time when this Code takes effect, by virtue of the common law or of any provision of statute.

N.Y. PENAL CODE § 720 (Banks & Bros. 1881). The code further provided:

> The omission to specify or affirm in this Code *any liability to any damages, penalty,* forfeiture or other remedy, imposed by law, and allowed to be recovered or enforced in any civil action or proceeding, for any act or omission declared punishable herein, does not affect any right to recover or enforce the same.

*Id.* at § 722 (emphasis added). These two sections were recodified in 1909 as §§ 23 and 24 of the Penal Law, and incorporated into the present Penal Law at § 5.10(3). The present statute declares that:

> [t]his chapter does not bar, suspend, or otherwise affect *any right or liability to damages, penalty,* forfeiture or other remedy authorized by law to be recovered or enforced in a civil action, *regardless of whether the conduct involved in such civil action constitutes an offense defined in this chapter.*

N.Y. PENAL LAW § 5.10(3) (McKinney 1987) (emphasis added).[4] OCC has not convinced the court that the New York legislature has ever regarded the recovery of punitive damages by the State in a public-nuisance action as a common-law criminal punishment that was intended to be abolished with the codification of New York's criminal law in 1881 or with any statutory revision thereafter. Rather, it appears to the court that the more logical reading of the statutory scheme, as reflected in §§ 720 and 722 of 1881 Code and in their successor statute, Penal Law § 5.10(3), is that it was intended to preserve the State's right to bring civil actions, including those sounding in public nuisance, seeking whatever remedies would be available to a private litigant. Indeed, assuming *arguendo* the truth of the State's allegations concerning OCC's conduct at Love Canal, the court suspects that OCC's assertion that it can be punished by no more than a misdemeanor conviction and a two-thousand-dollar fine would be greeted by New York's legislature and courts with a fair amount of incredulity.

Although OCC complains that the State's punitive-damages claim raises the specter of "unconstrained official coercion and government oppression," Item 867 at 12, it never explains how a $250 million punitive-damages claim brought by the State in a civil cause of action other than public nuisance, or, for that matter, a $250 million punitive-damages claim brought by a private party, would be any less coercive or oppressive. Furthermore, OCC ignores at least three crucial distinctions between a criminal prosecution and a civil lawsuit seeking punitive damages: first, the former punishes primarily through the deprivation of life and liberty, while the latter always punishes through monetary assessments; second, a criminal conviction, even for a corporation, can bring significant collateral consequences that do not accompany liability for punitive damages; and third, "a civil verdict directing payment of punitive damages does not carry the same

---

4. OCC states in it reply memorandum that § 5.10 is inapplicable because "[p]unitive damages to the State have *never* been cognizable under the common law of New York," Item 896 at 15–16 (emphasis supplied), but offers no authority for this claim.

heavy societal stigma stamped by a criminal conviction no matter what sentence is imposed." *Wittman v. Gilson,* 70 N.Y.2d 970, 525 N.Y.S.2d 795, 796, 520 N.E.2d 514, 515 (1988).

That there may be similar purposes served by a punitive-damages award and a criminal penalty is simply not enough to compel the conclusion that the two remedies must, for all practical purposes, be equated when the State is the party seeking punitive damages in the context of a public-nuisance action. "It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989). In the words of the Minnesota Supreme Court, "[w]hatever, in legal contemplation, exemplary damages may be, whether properly termed aggravated relief, or a penalty pure and simple, *they are not imposed in the sense of or as a substitute for criminal punishment, but rather as enlarged damages for a civil wrong.*" *State v. Shevlin–Carpenter Co.,* 99 Minn. 158, 108 N.W. 935, 939 (1906) (emphasis added). Moreover, as indicated by Penal Law § 5.10(3), this is true even if the conduct at which a public-nuisance suit is aimed is also punishable as a crime. Thus in *City of New York v. Alhambra Theatre Co.,* 136 A.D. 509, 121 N.Y.S. 3 (App.Div., 1st Dep't 1910), *aff'd,* 202 N.Y. 528, 95 N.E. 1125 (1911), the court held that the City of New York could recover a monetary civil penalty pursuant to a municipal ordinance even though the conduct constituting a violation of the ordinance was also punishable as a crime under the Penal Law. The court characterized the ordinance's monetary penalty as a "civil remedy, entirely distinct from the punishment of the act or acts as a [crime]," and held that, "[a]s such it is not a punishment within the meaning of section 719 forbidding punishments other than as specified in the Penal Code." 136 A.D. at 512, 121 N.Y.S. 3. In so holding, the court stressed that "the Penal Code relates to crimes and *their* punishment." *Id.* (emphasis added). Although that case involved a civil penalty that was imposed pursuant to a municipal ordinance, its reasoning is equally applicable here in light of what the court perceives to have been the legislative intent underlying Penal Law § 5.10(3) and its predecessors. *Cf. Wittman v. Gilson,* 525 N.Y.S.2d at 796, 520 N.E.2d at 515 (wrongful-death verdict for private plaintiff, which included award of punitive damages, upheld against double-jeopardy attack despite the fact that the defendant previously had pled guilty to criminally negligent homicide for conduct at issue).

The cases cited by OCC do not hold otherwise. For example, OCC invokes *People v. Ingber,* 248 N.Y. 302, 162 N.E. 87 (1928), as authority for its argument that the State is barred from pursuing any form of nonstatutory punishment. In *Ingber,* the New York Court of Appeals stated that § 22 of the 1909 Penal Law, the recodification of § 2 of the 1881 Penal Code, was designed "merely to abolish common-law crimes and common-law punishments." *Id.,* 248 N.Y. at 307, 162 N.E. 87. However, read in light of the overall statutory scheme embodied in the 1881 Penal Code and continued in the Penal Law, it is evident that the court was not suggesting that the abolishment of common-law punishments extended beyond the scope of the concomitant abolishment of common-law crimes. In other words, common-law punishments were barred by the 1881 Penal Code to the extent that they had theretofore been imposed for common-law crimes; as expressed by the court in *City of New York v. Alhambra Theatre Co.,* the code abolished common-law crimes and *their* punishments. In the present case, however, OCC is not being charged with a crime; it is being sued civilly for allegedly creating a public nuisance. And as Penal Law § 5.10(3) and its predecessors make clear, the possibility that the alleged conduct might also be punishable as a crime does not preclude civil liability.

OCC's citation of *People ex rel. Lemon v. Elmore,* 256 N.Y. 489, 177 N.E. 14 (1931), in support of its suggestion that criminal prosecution is the only means by which the creation of a public nuisance can be "punished" is similarly unavailing.

While the court in *Elmore* did state that "[p]unishment for past wrongs must be had by criminal prosecution," *id.*, 256 N.Y. at 495, 177 N.E. at 16, that statement was made in the context of the court's discussion of whether certain statutorily authorized actions designed to redress public nuisances violated a defendant's right to a jury trial. In determining that the assessment of a penalty tax did while the issuance of an injunction did not, the court never indicated that the State could not pursue common-law civil remedies such as a public-nuisance action. Indeed, the court indicated quite the contrary:

> The great weight of authority accords with the conclusion that an equitable remedy [such as an injunction], provided in the public interest against the maintenance of a public nuisance, does not violate any right to a jury trial in "cases in which it has been heretofore used," *even though previously the only remedy against such a nuisance was by a common-law action.*

*Id.*, 256 N.Y. at 494, 177 N.E. at 16 (emphasis added) (quoting N.Y.CONST. art. I, § 2 (1894, amended 1938)). Even more basic with regard to the present case, OCC has not requested, let alone been denied, a jury trial.

OCC asserts that "the State can point to no authority concluding that punitive damages sought *by the State* are civil in nature." Item 896 at 14 (emphasis supplied). That is hardly surprising, since punitive damages are considered "penal" in nature even when they are sought by a private party. *See, e.g., Le Mistral, Inc. v. Columbia Broadcasting Sys.*, 61 A.D.2d 491, 402 N.Y.S.2d 815, 817 (App.Div., 1st Dep't 1978); *Ingle v. Mark*, 58 Misc.2d 895, 296 N.Y.S.2d 664, 666 (Sup.Ct.1969). OCC ignores the fact that New York courts have never stated that the penal nature of punitive damages renders them anything other than a civil remedy when pursued by a sovereign. Indeed, as discussed below, New York courts have recognized the pre-

rogative of sovereign entities to seek punitive damages in common-law public-nuisance actions.

In sum, it appears to the court that, under New York law, what the State seeks here is a civil penalty that is outside the purview of the criminal law. OCC thus has failed to persuade the court that the enactment of § 240.45(1), or of any of its predecessors, evinced an intent by the New York legislature to preclude the State from seeking punitive damages in a public-nuisance action. Contrary to OCC's arguments, it appears that New York law has never deemed the creation or maintenance of a public nuisance to be punishable *only* as a crime and *only* by the statutory penalties enumerated in the Penal Law or its predecessor statutes.

b) *New York Case Law*

■ OCC also claims that New York case law confirms the unavailability of punitive damages to the State in a public-nuisance action. OCC contends that the State's claim for punitive damages "is wholly devoid of supportive precedent," Item 867 at 3, and characterizes punitive damages as a "private remedy" that has *"never* been available to the State in a public nuisance action under a common law theory." Item 896 at 13 (emphasis added). OCC is clearly incorrect. While New York courts may never have faced the precise arguments proffered by OCC in the present case, it is apparent that OCC's sweeping assertions are unfounded.

In *City of New York ex rel. People v. Taliaferrow*, 144 Misc.2d 649, 544 N.Y.S.2d 273 (Sup.Ct.1989), *aff'd*, 158 A.D.2d 445, 551 N.Y.S.2d 253, 254 (App.Div., 2d Dep't 1990), the City of New York brought a public-nuisance action to stop and otherwise to redress the use of a premises for prostitution.[5] Among the various forms of relief it granted, the trial court awarded the city $100,000 in punitive damages. 544 N.Y.S.2d at 277.[6] On appeal, the court

---

**5.** The city also invoked provisions of its administrative code and of the State's public-health law not relevant here. *See* 544 N.Y.S.2d at 274 n. 2.

**6.** OCC states in it reply memorandum that "no New York court has awarded punitive damages to the State in any type of civil action," Item 896 at 13, and that "the State cannot cite a single

determined that the city was not barred from recovering punitive damages by the fact that they were not statutorily authorized. In so holding, the court stated: "[T]he [trial] court had the right to award punitive damages pursuant to the common-law theory of a [sic] public nuisance. *This conclusion is not altered by the fact that the plaintiffs are governmental entities.*" 551 N.Y.S.2d at 254 (emphasis added).[7]

In *State of New York v. Schenectady Chemicals, Inc.*, 117 Misc.2d 960, 459 N.Y. S.2d 971 (Sup.Ct.1983), *modified*, 103 A.D.2d 33, 479 N.Y.S.2d 1010 (App.Div., 3rd Dep't 1984), the State brought suit against a chemical company for dumping chemical wastes that had polluted surface and subsurface water supplies, and sought punitive damages on its common-law public-nuisance claims. In refusing to dismiss those claims, the trial court indicated that, if the State were successful, "punitive damages would lie." 459 N.Y.S.2d at 978. Although it may well be, as OCC contends, that neither the trial court nor the appellate court in that case focused its analysis specifically on the legality of the State's attempt to obtain punitive damages, *see* Item 867 at 19 n. 15; Item 896 at 17–18, it is clear that neither court saw any need to question the State's authority in that regard. In any event, the trial court concluded that punitive damages could be recovered by the State, and its reference to punitive damages clearly cannot, as urged by OCC, be dismissed as mere dicta or characterized as providing "no useful authority" regarding the availability of punitive damages to the State. *See* Item 867 at 19 n. 15. Indeed, the court in *Taliaferrow* cited *Schenectady Chemicals* in support of its determination that the City of New York could recover punitive damages. *See* 551 N.Y.S.2d at 254.

Finally, in *Caso v. District Council 37, American Federation of State, County & Municipal Employees*, 43 A.D.2d 159, 350 N.Y.S.2d 173 (App.Div., 2d Dep't 1973), officials of Nassau County, the Town of North Hempstead, and the Town of Oyster Bay brought a public-nuisance action on behalf of their respective governmental units. The case involved a work stoppage by a municipal union responsible for servicing sewage-treatment plants in Manhattan. The work stoppage caused approximately one billion gallons of raw sewage to be discharged into the East River, and the local governmental units sought punitive damages for the harm to their water and beaches caused by the sewage as it dispersed into Long Island Sound. After determining that applicable statutory remedies were not exclusive, the court held that the local governments were entitled to pursue their common-law claim. While the court in *Caso* also did not focus on the legality of the local governments' punitive-damages claim, it, too, saw no reason to question the authority of the respective governments in that regard. The trial court in *Schenectady Chemicals* cited *Caso* in support of its conclusion that the State was authorized to seek punitive damages in a public-nuisance action. *See* 459 N.Y.S.2d at 978.

Citing *Copart Industries, Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 394 N.Y. S.2d 169, 362 N.E.2d 968 (1977), OCC argues that "[c]riminal prosecution or an action for abatement are still *the* recognized remedies available to the State for public nuisance." Item 867 at 20 (emphasis added). But while the Court of Appeals did state in that case that a public nuisance "is subject to abatement or prosecution on application of the proper governmental agency," *id.*, 394 N.Y.S.2d at 172, 362 N.E.2d at 971, it never intimated that those were the exclusive remedies available to the State. Furthermore, as *Taliaferrow, Schenectady Chemicals*, and *Caso* make clear, punitive damages have also been recognized as one

New York case in which it has been awarded punitive damages under a common law theory *in any type of action.*" *Id.* at 16 (emphasis supplied). OCC never explains, however, how the trial court's award of punitive damages to the city in *Taliaferrow* would differ conceptual-

ly from an award of punitive damages to the State.

7. In fairness to OCC, the court notes that the appeal in *Taliaferrow* was decided after oral argument on the present motion.

of the remedies available to the State to redress a public nuisance. *See also Brink's, Inc. v. City of New York*, 546 F.Supp. 403 (S.D.N.Y.1982), *aff'd*, 717 F.2d 700 (2d Cir.1983) (city recovers punitive damages on New York common-law negligence claim).[8]

■ To be sure, a federal court interpreting state law is not bound by lower-state-court rulings when there are solid grounds to believe that a state's highest court would rule differently. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Competex, S.A. v. LaBow*, 783 F.2d 333, 340 n. 16 (2d Cir.1986); *Calvert v. Katy Taxi, Inc.*, 413 F.2d 841, 846 (2d Cir.1969); *Roginsky v. Richardson–Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir.1967) (per curiam on petition for rehearing). In the present case, however, OCC has not convinced the court that the New York Court of Appeals would find that the lower-court cases cited above have led the court astray from the proper interpretation of state law.

c) *The Need for Statutory Authorization*

■ OCC also argues that the State's punitive-damages claim is barred because there is no statute expressly authorizing the State to recover punitive damages in a public-nuisance action. The relevant cases cited by OCC, however, merely indicate that when the State brings a cause of action *based on a statute*, punitive damages cannot be recovered unless the statute authorizes their recovery. *See State of New York v. Solil Management Corp.*, 128 Misc.2d 767, 491 N.Y.S.2d 243, 249 (Sup.Ct. 1985); *State of New York v. Hotel Waldorf–Astoria Corp.*, 67 Misc.2d 90, 323

N.Y.S.2d 917, 920 (Sup.Ct.1971). In the present case, the State's claim for punitive damages is based on non-statutory, common-law causes of action, and, as indicated above, the court sees no bar under New York law to this claim.

d) *The Promotion of Valid Legal Objectives*

■ OCC's final argument based on New York law is that the State's punitive-damages claim should be dismissed because such an award in the present case would not serve any legitimate purpose.

Punitive damages play a distinctive role in civil litigation:

> Unlike compensatory damages, punitive damages are assessed to punish the wrongdoer rather than restore the victim. Accompanying this punitive function—and perhaps of greater significance ... is a deterrent one, for the award of punitive damages is intended to deter repetition of the tortious conduct by both the particular defendant adjudged liable and others who might be tempted to imitate his conduct.

*Williams v. City of New York*, 508 F.2d 356, 360 (2d Cir.1974) (citations omitted). *See also Doralee Estates, Inc. v. Cities Service Oil Co.*, 569 F.2d 716, 723 (2d Cir. 1977) ("Exemplary damages are intended to inject an additional factor into the cost-benefit calculations of companies who might otherwise find it fiscally prudent to disregard the threat of liability."). Punitive damages

> [n]ot only ... differ in purpose and nature from compensatory damages, but they may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted "maliciously, wantonly, or with a recklessness that betokens an improper

---

**8.** Other jurisdictions have recognized the right of sovereign entities to recover punitive damages under the common law. *See, e.g., State ex rel. Pollution Control Coordinating Bd. v. Kerr–McGee Corp.*, 619 P.2d 858 (Okla.1980) (state recovers punitive damages on common-law negligence claim); *Unified School District No. 490, Butler County v. Celotex Corp.*, 6 Kan.App.2d 346, 629 P.2d 196 (Ct.App.1981) (school district

recovers punitive damages on common-law fraud claim); *Village of Peck v. Denison*, 92 Idaho 747, 450 P.2d 310 (1969) (village recovers punitive damages in common-law action to enjoin interference with its water rights); *Peitzman v. City of Illmo*, 141 F.2d 956 (8th Cir.), *cert. denied*, 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577 (1944) (city recovers punitive damages on common-law tort claim).

**76**

motive or vindictiveness" ... or has engaged in "outrageous or oppressive intentional misconduct" or with "reckless or wanton disregard of safety or rights".... *Sharapata v. Town of Islip,* 56 N.Y.2d 332, 452 N.Y.S.2d 347, 348–49, 437 N.E.2d 1104, 1105–06 (1982) (citations omitted). *See also Home Ins. Co. v. American Home Products Corp.,* 75 N.Y.2d 196, 551 N.Y.S.2d 481, 484–86, 550 N.E.2d 930, 933–35 (1990); *Loughry v. Lincoln First Bank, N.A.,* 67 N.Y.2d 369, 502 N.Y.S.2d 965, 969, 494 N.E.2d 70, 74 (1986); *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961); *Zarcone v. Perry,* 572 F.2d 52, 55–56 (2d Cir.1978); *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d at 842–43.[9]

OCC argues that an award of punitive damages in this case for the purpose of deterrence is unnecessary. In support of its argument, OCC offers a somewhat confused balancing test, suggesting that "[w]hatever deterrent effect, if any, that would be served by the requested punitive-damages award *is far outweighed by* the deterrent effect created by today's vast array of state and federal environmental laws and regulations." Item 867 at 21 (emphasis added). Yet it makes no sense to weigh the potential deterrent effect of a punitive-damages award *against* that of environmental laws, for any deterrent effect produced by the former would add to rather than subtract from any deterrent effect produced by the latter.

The court takes no position at this time as to whether punitive damages are warranted in the present case; that is a matter

to be decided after careful evaluation of all the evidence admitted at trial. The court rejects, however, OCC's suggestion that, as a rule, punitive damages should not be available to the State because current environmental laws provide whatever deterrence is necessary to OCC and others, and that, consequently, the only purpose that would be served by an award of punitive damages in a case such as this "is punishment for punishment's sake alone." Item 867 at 23. It is hardly revelatory to state that willful and reckless contamination of the environment with hazardous substances and the resulting threat to public health are scourges that remain with us today and that are not likely to disappear tomorrow. Indeed, it makes no sense to discard the potential "deterrent medicine," *Williams v. City of New York,* 508 F.2d at 361, that punitive damages could provide for OCC and others until the validity of the State's allegations is resolved. Whether the State can sustain its claim that punitive damages are justified in this case, whether to deter or to punish, is a question that simply cannot be answered at this time.

## II. *Constitutional Arguments*

### a) *Due Process*

#### i. *Vagueness*

■ OCC also argues that the State's punitive-damages claim is barred by the Due Process Clauses of the Fourteenth Amendment to United States Constitution and Article 1, § 6 of the New York State Constitution, claiming that the New York common-law standard for assessing punitive damages is unconstitutionally vague.[10]

9. In a recent case involving private parties, the New York Court of Appeals stated in a memorandum opinion: "Unlike the sanction imposed on behalf of all the people of the State in a criminal case, punitive damages in a civil case context afford the injured party a personal monetary recovery over and above compensatory loss." *Wittman v. Gilson,* 70 N.Y.2d 970, 525 N.Y.S.2d 795, 796, 520 N.E.2d 514, 515 (1988). The language employed by the court appears to go beyond that which it historically had used in describing the purposes served by punitive damages. *See Racich v. Celotex Corp.,* 887 F.2d 393, 397 (2d Cir.1989) (The Second Circuit, citing *Wittman,* notes that "there is some indication

that the New York courts view punitive damages as having a purpose beyond punishment."). The court expresses no opinion as to whether the New York Court of Appeals intended its decision in *Wittman* to recognize a more expansive role for punitive damages than that which traditionally had been identified by New York courts.

10. OCC does not argue that the due-process protections provided by the federal and state constitutions differ in any respect. *See People v. Gazulis,* 29 Misc.2d 939, 212 N.Y.S.2d 910, 915 (Poughkeepsie City Ct.1961).

OCC's vagueness argument is based essentially on Justice O'Connor's concurring opinion in *Bankers Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988). That case involved a claim under Mississippi law that the Bankers Life and Casualty Company had refused in bad faith to pay an insurance claim. A jury awarded the plaintiff twenty thousand dollars in actual damages and $1.6 million in punitive damages, and the verdict was affirmed by the Mississippi Supreme Court. Although the company raised a federal due-process argument on appeal to the United States Supreme Court, the Court refused to consider that and other federal constitutional issues because they had not been pressed or passed upon in state court. Instead, the Court addressed only the company's argument that a 15% statutory penalty assessed against it for appealing unsuccessfully violated the Equal Protection Clause of the Fourteenth Amendment. In her concurring opinion, which was joined by Justice Scalia, Justice O'Connor expressed reservations over what she described as the "wholly standardless discretion" conferred upon juries in Mississippi in determining an appropriate amount of punitive damages once it had been found that a given defendant had acted with the requisite mental state. Justice O'Connor commented that, "because of the punitive character of such awards, *there is reason to think* that this may violate the Due Process Clause," *id.*, 486 U.S. at 87, 108 S.Ct. at 1655 (emphasis added), and that such unbridled latitude "*appears* inconsistent with due process." *Id.*, 486 U.S. at 88, 108 S.Ct. at 1656 (emphasis added).

Citing Justice O'Connor's misgivings regarding the law of Mississippi, OCC argues that "[t]he constitutional infirmity that Justice O'Connor saw in the law of Mississippi also afflicts the law of New York," Item 867 at 25, and that the New York standard for calculating punitive damages "essentially replicates the Mississippi standard that Justice O'Connor found deficient." *Id.* at 26.

The court finds OCC's argument unconvincing. First, Justice O'Connor's concurring opinion was just that—a concurring opinion; the Court itself did not reach the due-process issue she discussed. Moreover, Justice O'Connor neither "saw" nor "found" any constitutional infirmity in the law of Mississippi with regard to the amount of punitive damages that juries can award in that state. Rather, she merely indicated that the appellant in that case "ha[d] touched on a due process issue that ... is worthy of the Court's attention *in an appropriate case*," 486 U.S. at 87, 108 S.Ct. at 1655 (emphasis added), but ultimately agreed with the Court's decision not to address the due-process claim. *See id.*, 486 U.S. at 88–89, 108 S.Ct. at 1656.

Second, New York law cannot fairly be characterized as "wholly standardless" with regard to the amount of punitive damages that can be awarded. Rather, it appears that, once it has been found that punitive damages are appropriate,[11] there are limits on the amount of such damages that a trier of fact can award. Although punitive damages are not fixed by any rigid formula, *I.H.P. Corp. v. 210 Central Park South Corp.*, 16 A.D.2d 461, 228 N.Y.S.2d 883, 889 (App.Div., 1st Dep't 1962), *aff'd*, 12 N.Y.2d 329, 239 N.Y.S.2d 547, 189 N.E.2d 812 (1963), and "need bear no ratio to compensatory damages," *Hartford Accident & Indem. Co. v. Village of Hempstead*, 48 N.Y.2d 218, 422 N.Y.S.2d 47, 53 n. 15, 397 N.E.2d 737, 743 n. 15 (1979), "they should bear some reasonable relation to the harm done and the flagrancy of the conduct causing it." *I.H.P. Corp. v. 210 Cen-*

---

**11.** As noted above, punitive damages may be awarded in New York "when the wrongdoer has acted 'maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness' ... or has engaged in 'outrageous or oppressive intentional misconduct' or with 'reckless or wanton disregard of safety or rights.'" *Sharapata v. Town of Islip*, 452 N.Y. S.2d at 349, 437 N.E.2d at 1106 (citations omitted). *See also Walker v. Sheldon*, 223 N.Y.S.2d at 490, 179 N.E.2d at 498 (punitive damages are appropriate "where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives"). OCC concedes that "the criterion of liability arguably is stated with sufficient precision." Item 867 at 26. *See Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 282 (2d Cir.1990).

tral Park South Corp., 228 N.Y.S.2d at 889. See also Rupert v. Sellers, 48 A.D.2d 265, 368 N.Y.S.2d 904, 910 (App.Div., 4th Dep't 1975); Micari v. Mann, 126 Misc.2d 422, 481 N.Y.S.2d 967, 972 (Sup.Ct.1984); Universal City Studios, Inc. v. Nintendo Co., 615 F.Supp. 838, 863 (S.D.N.Y.1985), aff'd, 797 F.2d 70 (2d Cir.), cert. denied, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). Furthermore, New York courts have expressed the caution that an award of punitive damages should be kept "within reasonable bounds considering the purpose to be achieved as well as the mala fides of the defendant in the particular case." Faulk v. Aware, Inc., 19 A.D.2d 464, 244 N.Y.S.2d 259, 266 (App.Div., 1st Dep't 1963), aff'd, 14 N.Y.2d 899, 252 N.Y.S.2d 95, 200 N.E.2d 778 (1964), cert. denied, 380 U.S. 916, 85 S.Ct. 900, 13 L.Ed.2d 801 (1965), quoted in Nellis v. Miller, 101 A.D.2d 1002, 477 N.Y.S.2d 72, 74 (App.Div., 4th Dep't 1984).[12] Significantly, the United States Court of Appeals for the Second Circuit recently rejected a vagueness attack on the New York common-law standards for imposing punitive damages in the context of mass-tort litigation involving private parties. See Racich v. Celotex Corp., 887 F.2d 393, 398–99 (2d Cir.1989).

Finally, insofar as OCC expresses concern regarding the extent to which New York law may allow too much leeway for the "whims and prejudices" of juries, see Item 867 at 27, the court presumes OCC is not suggesting that such considerations apply in the context of a bench trial. In any event, the court finds the criteria set forth above sufficient to survive OCC's constitutional challenge.

### ii. Standard of Proof

■ OCC also argues that the State, by pressing its punitive-damages claim, is attempting to bypass protections required by the Due Process Clause of the Fourteenth Amendment for criminal or quasi-criminal proceedings. OCC maintains that, because it is, in OCC's words, "more nearly analogous to criminal prosecution than to ordinary civil litigation," the State's punitive-damages claim should be subjected to "the constitutionally required procedures for criminal prosecution." Item 867 at 29. Specifically, OCC asserts that due process demands that the State be required to establish its punitive-damages claim with proof beyond a reasonable doubt. Item 867 at 29–35.[13]

■ In support of its argument, OCC cites Kennedy v. Mendoza–Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). In that case, the Supreme Court set forth seven factors to be employed in determining whether a statutory penalty is criminal in character, thereby requiring the constitutional protections normally afforded defendants in criminal prosecutions. Specifically, the Court indicated that the following factors should be considered:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may ra-

---

**12.** The court also notes that New York law provides the added protection that appellate courts are empowered to overturn an excessive punitive-damages award and to order a new trial on the issue if a plaintiff will not consent to reduction of the award. See Nardelli v. Stamberg, 44 N.Y.2d 500, 406 N.Y.S.2d 443, 445, 377 N.E.2d 975, 977 (1978); Brink's, Inc. v. City of New York, 546 F.Supp. at 413–15; 717 F.2d at 712–13; Roginsky v. Richardson–Merrell, Inc., 378 F.2d at 840 n. 12.

**13.** OCC does not contend that either the State's underlying public-nuisance action or its com-

pensatory-damages claim requires proof beyond a reasonable doubt. See Item 896 at 36 n. 28.

In its reply brief, OCC seems to suggest that other constitutional protections might apply to the State's attempt to recover punitive damages. See Item 896 at 35–37. See also Item 867 at 35 n. 29. Since OCC merely implies that "other procedural protections may also be applicable to this case," id. at 35 (emphasis added), without affirmatively arguing that any, in fact, do apply to the present case, the court will consider only OCC's contention regarding the proper burden of proof to which the State should be held on its punitive-damages claim.

tionally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned .... 372 U.S. at 168–69, 83 S.Ct. at 567–68 (footnotes omitted). As explained in *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), these factors, which are "neither exhaustive nor dispositive," *id.*, 448 U.S. at 249, 100 S.Ct. at 2641, are to be employed as elements of the second of a two-part test: first, courts should determine whether a given penalty was intended to be civil or criminal; second, if the penalty was intended to be civil, courts should then determine whether the statutory scheme is so punitive in either purpose or effect so as to negate that intention. *Id.*, 448 U.S. at 248–49, 100 S.Ct. at 2641.[14]

The court finds that, assuming *arguendo* that the analysis set forth in *Ward* and *Mendoza–Martinez* is applicable to common-law remedies, the State should not be required to establish its entitlement to punitive damages with proof beyond a reasonable doubt. First, as indicated by the discussion above, OCC has not convinced the court that State-sought punitive damages were ever considered under New York law to be a criminal punishment. Second, the court does not consider the monetary damages sought by the State to be "so punitive as to 'transform[m] what was clearly intended as a civil remedy into a criminal penalty.'" *United States v. Ward*, 448 U.S. at 249, 100 S.Ct. at 2641 (quoting *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956)). This conclusion is supported by at least the latter three factors enumerated *Mendoza–Martinez*: while the alleged behavior for which punitive damages are sought in the present case is punishable as a crime, it also has been recognized as a civil wrong for hundreds of years; punitive damages clearly are rationally connected to the pub-

lic policy of protecting public health and the environment; and, assuming *arguendo* the truth of the State's allegations, even the sizeable punitive-damages award sought in the present case is not necessarily excessive in relation to the vital public interests at stake.

The Supreme Court has held that proof by a preponderance of the evidence suffices even in civil suits involving proof of acts that expose a party to criminal prosecution. *See United States v. Regan*, 232 U.S. 37, 47–48, 34 S.Ct. 213, 58 L.Ed. 494 (1914). Furthermore, the Supreme Court has noted that "imposition of even severe civil sanctions that do not implicate [particularly important individual interests or rights] has been permitted after proof by a preponderance of the evidence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983).[15] This court has not been persuaded that due process requires application of a different burden of proof in the present case. In making this assessment, the court recognizes that "the labels 'criminal' and 'civil' are not of paramount importance." *United States v. Halper*, 109 S.Ct. at 1901. But the fact that the State is the party seeking punitive damages is not enough in itself to transform this civil remedy into the functional equivalent of a criminal penalty requiring application of the standard of proof traditionally applied only in criminal cases. *See Unified School District No. 490, Butler County v. Celotex Corp.*, 6 Kan.App.2d 346, 629 P.2d 196 (Ct.App.1981) (in upholding the recovery of punitive damages by school district against several constitutional challenges, court holds that "[t]he imposition of punitive damage awards, although penal in nature, does not approach the severity of criminal sanctions and does not demand the same safeguards as do criminal prosecutions"). *Cf. Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 282 (2d Cir.1990) (in case involving private par-

---

14. In *Mendoza–Martinez*, the Court did not engage in a detailed examination of the seven factors it had enumerated because it found clear evidence that Congress intended the sanction at issue in that case to be a criminal penalty. *See* 372 U.S. at 169–84, 83 S.Ct. at 568–76.

15. As examples, the Court cited parental-rights termination proceedings, involuntary-commitment proceedings, and deportation proceedings. 459 U.S. at 389.

ties, court holds that due process does not require an award of punitive damages to be supported by "clear and convincing evidence"); *Jordan v. Clayton Brokerage Co.*, 861 F.2d 172, 178 (8th Cir.1988) (in rejecting due-process challenge in suit between private litigants, court holds that "punitive damages are civil in nature and are therefore not required by the [United States] Constitution to be subject to proof beyond a reasonable doubt").

### b) *Eighth Amendment*

■ OCC's final constitutional argument is that any recovery of punitive damages by the State that exceeds the maximum criminal fine of two thousand dollars per offense would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

In support of its argument, OCC cites *Browning–Ferris Industries v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), in which the Supreme Court held that the Excessive Fines Clause "does not apply to awards of punitive damages in cases between private parties." *Id.*, 109 S.Ct. at 2912. In a somewhat novel attempt at deductive reasoning, OCC asserts that "[t]he *inescapable implication* of this analysis is that the Excessive Fines Clause *does* apply to punitive damages sought by the state." Item 867 at 36 (latter emphasis supplied). Suffice it to say that the issue of whether the Excessive Fines Clause applies to the recovery of punitive damages by a sovereign entity simply was not before the Supreme Court in *Browning–Ferris*. Moreover, questions regarding the excessiveness of any award of punitive damages in the present case are not ripe for adjudication since liability has not been found, let alone an award made, for such damages.

### OTHER PENDING MOTIONS

With regard to the balance of the pending pretrial motions:

1) The State's motion *in limine* to preclude the presentation of risk-assessment evidence at the Phase I trial is denied at this time. *See* Items 741, 758, 815, 900.

Questions regarding the admissibility of specific risk-assessment evidence insofar as such evidence relates to the State's punitive-damages claim shall be addressed as they arise during the course of the Phase I trial.

2) Decision on all other pending motions shall be reserved. These motions shall be carried to trial.

In sum, OCC's motion to dismiss the State's claim for punitive damages or, in the alternative, for partial summary judgment on that claim is denied. The State's motion *in limine* to preclude the presentation of risk-assessment evidence at the Phase I trial is denied at this time. All other motions shall be carried to trial.

So ordered.