OPINION OF THE COURT
Harold J. Hughes, J.
The court must decide if the State, either by statute or common law, can maintain an action to compel a chemical company to pay the costs of cleaning up a dump site so as to prevent pollution of surface and ground water when the dumping took place between 15 to 30 years ago at a site owned by an independent contractor hired by the chemical company to dispose of the waste material.
The amended notice of motion seeks: (1) dismissal of the complaint pursuant to CPLR 3211; (2) correction and strik *961 ing of matter from the complaint under CPLR 3024 (subds [a], [b]); and (3) a change of venue from Rensselaer to Albany County. Dismissal under CPLR 3211 is sought upon a myriad of grounds, including failure to state a cause of action. Prior to an examination of the complaint’s allegations, a review of the rules appurtenant to such a dismissal motion is appropriate. Unless a motion to dismiss for failure to state a cause of action is converted to one for summary judgment, which has not been requested or granted here, the court’s inquiry is limited to the allegations of the complaint as strengthened by any affidavits offered to preserve it (Rovello v Orofino Realty Co., 40 NY2d 633). Factual assertions in a defendant’s affidavit which contradict the allegations of the complaint must be disregarded. “[A]ll factual allegations of the complaint are assumed to be true and are to be most liberally construed in favor of the pleader” (Bervy v Hotaling, 88 AD2d 735, 736).
The amended complaint contains the following factual assertions. The action is brought by the State in its role as guardian of the environment against Schenectady Chemicals, Inc., with respect to a chemical dump site located on Mead Road, Rensselaer County, New York (hereinafter referred to as the Loeffel site). Since 1906 Schenectady Chemicals has manufactured paints, alkyl phenols and other chemical products, a by-product of which is waste, including but not limited to phenol, benzene, toluene, xylene, formaldehyde, vinyl chloride, chlorobenzene, 1,2 dichlorobenzene, 1,4 dichlorobenzene, trichloroethylene, chloroform, ethyl benzene, nethylene chloride, 1,1 dichloroethane, 1,2 dichloroethane, trans-1,2 dichloroethylene, lead, copper, chromium, selenium, and arsenic. These chemical wastes are dangerous to human, animal and plant life, and the defendant was so aware. During the 1950’s until the mid-1960’s the defendant disposed of its chemical wastes by way of contract with Dewey Loeffel, or one of Mr. Loeffel’s corporations. Mr. Loeffel made pickups at the defendant’s manufacturing plants and disposed of the material by dumping directly into lagoons at the Loeffel site, and in some instances by burying the wastes. It is alleged that with knowledge of the danger of environmen *962 tal contamination if its wastes were not properly disposed, and knowing of Loeffel’s methods, Schenectady Chemicals: (1) hired an incompetent independent contractor to dispose of the wastes; and (2) failed to fully advise Loeffel of the dangerous nature of the waste material and recommend proper disposal methods.
It is alleged that the Loeffel site is approximately 13 acres of low-lying swamp land located in a residential-agricultural area in Rensselaer County with surface soil consisting mainly of gravel and sand. The ground water beneath the site is part of an aquifer which serves as the sole source of water for thousands of area residents and domestic animals. The site drains into two surface streams, one a tributary of the Valatie Kill, and the other a tributary of Nassau Lake. During the period in question approximately 46,300 tons of chemical wastes were deposited at the Loeffel site, of which 17.8%, or 8,250 tons, came from defendant. The other material was generated by General Electric Company and Bendix Corporation and has been so inextricably mixed with defendant’s as to become indistinguishable.
The complaint alleges that over the years the chemical wastes have migrated into the surrounding air, surface and ground water contaminating at least one area drinking well and so polluting, or threatening to pollute, the area surface and ground water as to constitute an unreasonable threat to the public well-being and a continuing public nuisance. As a result, the Department of Environmental Conservation (DEC) developed a plan to prevent further migration of chemical wastes from the site, and General Electric and Bendix have agreed to pay 82.2% of the costs thereof. Defendant’s refusal to pay its portion of the clean-up costs gives rise to this suit.
After alleging the foregoing factual background the State sets forth eight specific causes of action in the amended complaint, as follows: (1) defendant is presently violating ECL 17-0501 by directly or indirectly discharging illegal waste material into the ground waters surrounding the Loeffel site through the ongoing migration of the pollutants; (2) defendant is in violation of ECL 17-0501 by polluting the surface waters in the same manner as the *963 ground water; (3) through the continuing migration of chemical wastes into surrounding ground and surface waters the defendant is in violation of ECL 17-1701, 17-0803. and 17-0807 which prohibit pollutant discharge without a DEC permit; (4) by permitting the disposal of its waste in the manner described, the defendant has contributed to the creation and maintenance of a public nuisance; (5) the generation and disposal of the chemical wastes described in the complaint constitutes an ultra-hazardous activity rendering defendant strictly liable for the resultant public nuisance; (6) the defendant negligently permitted the creation and maintenance of a dangerous public nuisance by selecting an incompetent contractor and not properly supervising the disposal process or warning of the dangers of the resultant nuisance; (7) through intentional acts and omissions, the defendant contributed to the creation and maintenance of the continuing public nuisance complained of; and (8) failing to abate the nuisance, thus causing DEC to incur $85,087 in investigatory and administrative expenses.
The relief sought is: (1) on the first, second and third causes of action, statutory fines in the amount of $10,000 per day for each day of the violations and an injunction prohibiting further violations; (2) on the fourth through seventh causes of action sounding in public nuisance, a judgment directing defendant to> abate the nuisance (by payment of 17.8% of the remedial plan or otherwise) and $1,000,000 in compensatory damages and $1,000,000 in punitive damages for polluting the air, water and land resources of the State of New York; (3) restitution on the eighth cause of action in the sum of $28,360; and (4) attorney’s fees.
To allege a statutory cause of action the pleader must assert a statute imposing a duty upon the defendant, breach thereof, and that the plaintiff is among the class authorized to bring the action "(see Motyka v City of Amsterdam, 15 NY2d 134, 139; Sanchez v Village of Liberty, 49 AD2d 507, 510, mod 42 NY2d 876, mod and app dsmd 44 NY2d 817). The first and second causes of action allege that defendant violated ECL 17-0501 which provides: “It shall be unlawful for any person, directly or indirectly, to *964 throw, drain, run or otherwise discharge into such waters organic or inorganic matter that shall cause or contribute to a condition in contravention of the standards adopted by the department pursuant to section 17-0301”. The third cause of action is premised upon violations of sections 17-1701, 17-0803 and 17-0807. ECL 17-1701 expired on September 1, 1973 (see L 1973, ch 801, § 17) and cannot serve as the basis of this action. The remaining two sections were enacted in 1973 (L 1973, ch 801), and essentially prohibit pollutant discharges without a permit. Violations of any. of the statutes subjects the offender to civil fines of up to $10,000 per day for each day the violation continues.
The decisive question in determining whether the conduct described in the complaint charges defendant with breach of the cited statutes is whether the term “discharge” should be construed to encompass the gradual migration of pollutants through permeable soil and ground and surface water from the original dump site into the surrounding environs. In other words, while no doubt Loeffel committed a “discharge” when he initially dumped the chemicals, can it be said that the slow spread of the pollutants over a 30-year period through the migration process constitutes each day anew a chemical “discharge” attributable to defendant and subjecting it to statutory fines for failing to possess a permit? The court holds that it does not. It would be ludicrous to expect someone to apply for, much less receive, a permit to allow long-ago dumped chemical wastes to continue to spread through natural processes. The purpose of the statutes is to prevent, through the threat of significant fines, the dumping of chemical wastes by persons not licensed to do so. That purpose would not be served by extending the statutes to the present situation. The complaint fails to charge defendant with a “discharge” of chemical wastes as that term is used in ECL 17-0501, 17-0803 and 17-0807 and, thus, the first three causes of action fail to state a cause of action.
The fourth through eighth causes of action rely upon a nuisance theory. The “term nuisance, which in itself means no more than harm, injury, inconvenience, or annoyance * * * arises from a series of historical accidents covering the invasion of different kinds of interests and *965 referring to various kinds of conduct on the part of defendants” (Copart Inds. v Consolidated Edison Co. of N. Y., 41 NY2d 564, 567). Nuisances are classified as either private or public (42 NY Jur, Nuisances, § 4, p 447). In Copart {supra, p 568) the Court of Appeals described a public nuisance as: “A public, or as sometimes termed a common, nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency (Restatement, Torts, notes preceding § 822, p 217; see Penal Law, § 240.45). It consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all (New York Trap Rock Corp. v Town of Clarkston, 299 NY 77, 80), in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons (Melker v City of New York, 190 NY 481, 488; Restatement, Torts, notes preceding § 822, p 217).”
An action to redress a private nuisance can be maintained upon allegations that the defendant’s conduct “is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities” (Copart Inds. v Consolidated Edison Co. of N. Y., supra, p 569). “[W]ith reference to a public nuisance, it is not necessary to show acts of negligence” (42 NY Jur, Nuisances, § 16, p 462), although such a showing is not prohibited. One who creates a nuisance through an inherently dangerous activity or use of an unreasonably dangerous product is absolutely liable for resulting damages, irregardless of fault, and despite adhering to the highest standard of care (Spano v Perini Corp., 25 NY2d 11). While at first blush this appears a harsh result, Judge Hand explained the basis of the rule in Exner v Sherman Power Constr. Co. (54 F2d 510, 514) as follows: “Furthermore, the imposition of absolute liability is not out of accord with any general principles of law. As Professor Holdsworth has said: ‘The dominant idea of Anglo-Saxon law’ was ‘that man acts at his peril’ * * * The extent to which one man in the lawful conduct of his business is liable for injuries to another involves an adjustment of conflicting interests. The solution of the problem in *966 each particular case has never been dependent upon any universal criterion of liability [such as ‘fault’] applicable to all situations. If damage is inflicted, there ordinarily is liability, in the absence of excuse.”
While ordinarily nuisance is an action pursued against the owner of land for some wrongful activity conducted thereon, “everyone who creates a nuisance or participates in the creation or maintenance * * * of a nuisance are liable jointly and severally for the wrong and injury done thereby” (17 Carmody-Wait 2d, NY Prac, § 107:59, p 334). Even a nonlandowner can be liable for taking part in the creation of a nuisance upon the property of another. Thus, in Hine v Aird-Don Co. (232 App Div 359) the Third Department held that it was for the jury to decide if the defendant had taken part in the creation of a nuisance so as to render it liable to the injured plaintiff through the act of leaving the unassembled parts of a furnace in a pile upon a public sidewalk. In Caso v District Council 37, Amer. Federation of State, County & Municipal Employees, AFL-CIO (43 AD2d 159) the defendant, a union of employees working for municipal sewage treatment plants, engaged in an illegal strike resulting in one billion gallons of raw sewage being emitted into the East River. The plaintiffs, officials of Nassau County and affected towns on Long Island, sued on behalf of their governmental units seeking compensatory and punitive damages for injury done to their water and beaches. The union moved to dismiss the complaint, alleging that no such cause of action existed, and the exclusive remedy was under the Taylor Law. The Second Department stated {supra, p 163), “A common-law cause of action in nuisance would appear to be the appropriate remedy in the instant case.”
The common law is not static. Society has repeatedly been confronted with new inventions and products that, through foreseen and unforeseen events, have imposed dangers upon society (explosives are an example). The courts have reacted by expanding the common law to meet the challenge, in some instances imposing absolute liability upon the party who, either through manufacture or use, has sought to profit from marketing a new invention or product (see Spano v Perini Corp., 25 NY2d 11, supra). The *967 modern chemical industry, and the problems engendered through the disposal of its by-products, is, to a large extent, a creature of the twentieth century. Since the Second World War hundreds of previously unknown chemicals have been created. The wastes produced have been dumped, sometimes openly and sometimes surreptitiously, at thousands of sites across the country. Belatedly it has been discovered that the waste products are polluting the air and water and pose a consequent threat to all life forms. Someone must pay to correct the problem, and the determination of who, is essentially a political question to be decided in the legislative arena. As Judge Bergan noted in Boomer v Atlantic Cement Co. (26 NY2d 219, 222, 223), resolution of the issues raised in society’s attempt to ameliorate pollution are to a large extent beyond the ken of the judicial branch. Nonetheless, courts must resolve the issues raised by litigants and, in that vein, this court holds that the fourth through seventh causes of action of the amended complaint state viable causes of action sounding in nuisance. The eighth cause of action does not state a cause of action since, in incurring the costs it seeks to recoup, DEC was simply performing the duties enjoined upon it by statute (see ECL 3-0301), and there is no basis for recovering such expense from defendant.
The defendant has raised many additional objections which need now be addressed. It is argued that the action is untimely. The limitation applicable to a nuisance cause of action is the three-year period provided in CPLR 214. The rule with respect to an ongoing nuisance, as here alleged, is that the action continually accrues anew upon each day of the wrong although the recovery of money damages is limited to the three-year period immediately prior to suit (Kearney v Atlantic Cement Co., 33 AD2d 848). Defendant’s contention that the limitation period should accrue upon the last day of dumping lacks merit since the law has long been settled that, “the right to maintain an action for a public nuisance continues as long as the nuisance exists; no one can obtain a prescriptive right to maintain a public nuisance.” (17 Carmody-Wait 2d, NY Prac, § 107:43, p 315.)
*968 The argument that the State lacks standing to maintain the action because the waters are private rather than public cannot withstand scrutiny. The amended complaint alleges that the waste has migrated from the Loeffel site into neighboring surface and ground water, including two streams. By statute “waters” is defined to include “all other bodies of surface or underground water * * * public or private (except those private waters which do not combine or effect a junction with natural surface or underground waters)” (ECL 17-0105, subd 2). Moreover, the common-law rule has long been that “water, like air, is an element in which no person can have an absolute property, yet, it is also, like air, free for the use of all, and the law has been diligent and rigorous to maintain it in its natural purity” (Seaman v Lee, 10 Hun 607, 608). In Matter of City of Johnstown v Water Pollution Control Bd. of State of N. Y. (12 AD2d 218, 220, mot for lv to app den 9 NY2d 613), Judge Bergan rejected a claim that protecting water from pollution somehow violated a due process property right, stating that the argument was “untenable since such rights do not attach to water itself and in any event are required to yield to public health and public safety”.
Defendant’s next contention is that the complaint must be dismissed since the requested relief is speculative and to some degree not authorized or appropriate. A complaint will not be dismissed due to a prayer for inappropriate relief so long as some right to recover is demonstrated (Kaminsky v Kahn, 13 AD2d 143, 146). Here, that demonstration is made as an “action lies by the people through the attorney general to abate a public nuisance, and to restrain its continuance, and for damages.” (17 CarmodyWait 2d, NY Prac, § 107:58, p 333.) Furthermore, punitive damages would lie (see Caso v District Council 37, Amer. Federation of State, County & Municipal Employees, AFL-CIO, 43 AD2d 159, supra). The court will dismiss the demand for attorneys’ fees since that relief is not available in the absence of a statute or contract authorizing same (Tucker v Toia, 64 AD2d 826, app dsmd 48 NY2d 755).
The objection that the complaint is improperly set forth as eight separate and distinct causes of action instead of one is not a basis for relief. While better pleaded as a single *969 nuisance cause of action, the method employed here does not constitute improper splitting since all claims are contained in a single action (Scotto v Socony-Vacuum Oil Co., 268 App Div 832; Frankel v Standard Radio Corp., 50 Misc 2d 492), and in the absence of prejudice, which is not present here, the complaint should stand (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C:3014:2, p 5).
As to the request for dismissal for failure to join necessary parties, i.e., other alleged tort-feasors guilty of dumping at the site, the rule is that those contributing to a nuisance are liable jointly and severally (17 Carmody-Wait 2d, NY Prac, § 107:59, p 334), and “[i]t is fundamental * * * that a plaintiff * * * is free to choose his defendants” (Putvin v Buffalo Elec. Co., 5 NY2d 447, 453). If defendant feels that others may have contributed to plaintiff’s damage it should commence the appropriate third-party practice (Dole v Dow Chem. Co., 30 NY2d 143).
The argument that plaintiff has released General Electric Company and Bendix and thus defendant is released must fail. First of all, the defendant as the moving party has the burden to “furnish at the hearing all other papers not already in the possession of the court necessary to the consideration of the questions involved” (CPLR 2214, subd [c]). The purported releases have not been furnished, lending credence to plaintiff’s assertion that they do not yet exist. More importantly, plaintiff has averred that the language of the proposed releases will specifically reserve its rights against defendant; thus, Schenectady Chemicals will not be discharged (see General Obligations Law, § 15-108).
The defenses of res judicata and collateral estoppel due to the order and judgment of March 4, 1968 in Ingraham v Loeffels Oil Removal & Serv. Co. are not available since this action involves different parties upon different causes of action, and defendant’s responsibility, if any, was never addressed in the prior action (see Shanley v Callanan Inds., 54 NY2d 52; Matter of Greenthal & Co. v Lefkowitz, 32 NY2d 457). Likewise, dismissal is not warranted under CPLR 3211 (subd [a], par 4) due to “another action pending between the same parties for the same cause of action” *970 since the pending case of Thornton v General Elec. does not involve the identical parties and causes of action (Forget v Raymer, 65 AD2d 953).
The defense that the statutory scheme of the Environmental Conservation Law is exclusive and bars common-law actions is directly contradicted by section 17-1101 of that law which states to the contrary. Likewise, the complaint cannot be dismissed upon defendant’s “state of the art” defense since, at the very least, that is a defense requiring expert testimony, as the court cannot take judicial notice of the alleged “state of the art” in chemical waste disposal as it supposedly existed 20 years ago. More importantly, the fact that a manufacturer may have complied with the latest industry standards is no defense to an action to abate a nuisance (see 42 NY Jur, Nuisances, § 39, pp 498, 499) since, as stated earlier, with respect to public nuisances and inherently dangerous activities,* fault is not an issue, the inquiry being limited to whether the condition created, not the conduct creating it, is causing damage to the public.
The final argument for dismissal worthy of discussion is the contention that by hiring a private contractor licensed to dispose of chemical wastes the defendant has met its legal duty and cannot be held liable for the contractor’s wrongdoing. Defendant’s vice-president of corporate technology has submitted an affidavit stating that either the United States or the State of New York had issued a waste disposal license “to Loeffel’s Waste Removal and Service Company, Inc. and/or Marcar Oil Co., Inc., which comprised a legal assurance to this defendant of the permitee’s competence and reliability in legally disposing of waste material * * * with this defendant reasonably relying thereon”. On the other hand, Dewey Loeffel has submitted an opposing affidavit alleging that in his capacity as president of Loeffel’s Waste Removal and Marcar Oil Co. he hauled the defendant’s chemical waste, and: “I did not have *971 a permit or license from any governmental agency for hauling industrial wastes during the 1950’s and early 1960’s. I do not believe that any such permits were required at that time”.
These conflicting averments present a factual issue precluding dismissal. Moreover, defendant could be found liable for Loeffel’s acts if: (1) it was negligent in retaining an incompetent contractor (28 NY Jur, Independent Contractors, § 17); (2) it failed, with knowledge thereof, to remedy or prevent an unlawful act (28 NY Jur, Independent Contractors, § 21); (3) the work itself was illegal (28 NY Jur, Independent Contractors, § 22); (4) the work itself was inherently dangerous (28 NY Jur, Independent Contractors, § 25); or (5) the work involved the creation of a nuisance (28 NY Jur, Independent Contractors, § 27). The amended complaint, which must be deemed to be true, makes allegations encompassing all of the above bases of liability. Factual issues requiring a trial are present.
Turning to defendant’s motion under CPLR 3024, it is one of the least favored in law (3 Weinstein-Korn-Miller, NY Civ Prac, par 3024.01) and will only be granted upon a showing that the material is scandalous or prejudicial, and even then only if the matter is not relevant (3 Weinstein-Korn-Miller, NY Civ Prac, par 3024.10), which showing has not been made. As to the application to change the place of trial, defendant has failed to demonstrate that a fair trial cannot be had in Rensselaer County or to demonstrate any other basis for a change of venue. The court has considered the other points raised by defendant and finds they lack merit.
The defendant’s motion will be granted to the extent of dismissing the first, second, third and eighth causes of action set forth in the amended complaint, as well as the prayer for an attorney’s fee, and in all other respects will be denied, without costs.

 Whether the dumping of chemical wastes constitutes an ultra-hazardous activity is a question for the jury, unless the record is such that the determination can be made as a matter of law (cf. Cohen v Thomas Co., 51 AD2d 963; A.J.P. Contr. Corp. v Brooklyn Bldrs. Supply Co., 171 Misc 157, affd 258 App Div 747, affd 283 NY 692). In either event, such a determination should be made upon the close of proof after the benefit of expert testimony.