## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 17, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 17, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) | No. 101264-1 (certified C18-6025RSL) |
| ANIMAL LEGAL DEFENSE FUND, | ) ) | En Banc |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Filed: August 17, 2023 |
| OLYMPIC GAME FARM, INC., ROBERT BEEBE, JAMES BEEBE, and KENNETH BEEBE, | ) ) ) ) | |
| Defendants. | ) ) ) | |

JOHNSON, J.—This case involves a certified question from the United States District Court, asking whether a violation of Washington's animal protection laws can establish a claim for a public nuisance, absent an indication that the legislature so intended and absent a showing that the violation interferes with the use and enjoyment of property or is injurious to public health and safety. The case was brought by the Animal Legal Defense Fund (ALDF) against the Olympic

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Game Farm Inc. (OGF). ALDF argues that OGF has violated Washington's wildlife laws, animal cruelty laws, and both the Washington and federal Endangered Species Act of 1973, 16 U.S.C. §§ 1531-1544, thus creating a public nuisance. OGF argues that ALDF has no valid legal claim for public nuisance because ALDF has not demonstrated that any wildlife statutes have been violated. Even if ALDF could prove such a violation, the legislature has not named such violations a nuisance nor has ALDF demonstrated that a property interference or threat to public health and safety has occurred. Based on our case law and statutory definitions of public nuisance, and the lack of any indication in case law or statute that violation of animal protection laws has been declared a nuisance, we answer the certified question in the negative.

## I. FACTS AND PROCEDURAL HISTORY

The parties in this case are ALDF, an animal advocacy organization based in California, and OGF, a private zoo in Sequim, Washington. In 2018, ALDF filed a complaint against OGF in the United States District Court. The original complaint by ALDF alleged violations of the federal Endangered Species Act (ESA), based on harm and harassment of gray wolves, lions, tigers, bears, and Canada lynx at the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

facility, and a public nuisance based on confinement of federally protected species and violation of Washington State animal protection laws (RCW 16.52.205).

ALDF conducted extensive discovery, and both parties collected testimony from a number of witnesses, including local Sequim residents, specialist wildlife veterinarians, veterinarians for OGF, United States Department of Agriculture inspectors, and former and current OGF employees. The submitted record is substantial.

The case was initially assigned to Judge Ronald Leighton. OGF filed a motion to dismiss the public nuisance claim, contending that ALDF did not have standing to maintain a nuisance action because it did not allege facts that it suffered a special injury, as required by RCW 7.48.210. In his decision, Judge Leighton relied primarily on *Chelan Basin Conservancy v. GBI Holding Co.*, 190 Wn.2d 249, 272, 413 P.3d 549 (2018), in which we said that an individual must be specially injured in order to have standing for a public nuisance claim, but that requirement is not a particularly high bar. Judge Leighton determined that ALDF met the low bar of standing in the public nuisance context and denied the motion to dismiss. *Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, 387 F. Supp. 3d 1202 (W.D. Wash. 2019).

In 2020, Judge Leighton retired, and the case was reassigned to Judge Robert Lasnik. Both parties then moved for summary judgment. Judge Lasnik

granted in part OGF's motion for summary judgment, determining that ALDF had raised a triable issue of fact about whether certain specific actions of OGF violated the ESA, but he dismissed the public nuisance claim because nuisances must be either legislatively declared or concern interference in the use and enjoyment of property or in the health and safety of the public. Judge Lasnik denied ALDF's motion for summary judgment.

ALDF filed a motion for reconsideration of the summary judgment order. OGF also filed a motion for reconsideration. Judge Lasnik granted ALDF's motion for reconsideration, in part, stating that the essential elements of a public nuisance claim should be determined by the state's highest court, and thus the question on public nuisance was certified to this court.[1]

## II. CERTIFIED QUESTION

> Does a violation of Washington's wildlife laws, animal cruelty laws, and/or Endangered Species Act establish a claim for public nuisance in the absence of a showing that the conduct was legislatively declared a public nuisance, interferes with the use and enjoyment of property, or is injurious to public health or safety?

Ord. Certifying Question, No. C18-6025RSL at 8 (W.D. Wash. Sept. 6, 2022.)

---

[1] Two amici briefs were submitted supporting ALDF, one from the Center for Biological Diversity and one from a group of self-described historians and legal scholars.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Animal Legal Def. Fund v. Olympic Game Farm*, No. 101264-1

III. ANALYSIS

Judge Robert Lasnik of the United States District Court, Western District of Washington, certified the public nuisance question to this court under RAP 16.16. Pure questions of law, certified from a federal court, are reviewed de novo. *In re F5 Networks, Inc.*, 166 Wn.2d 229, 236, 207 P.3d 433 (2009). The court does not consider the legal issue in the abstract but considers it in the context of the certified record provided by the federal district court. RCW 2.60.030(2); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 126, 196 P.3d 664 (2008).

Washington's statutory definition of "nuisance" is in chapter 7.48 RCW. The general definition of "nuisance" is

> unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.

RCW 7.48.120. Public nuisance is a type of nuisance that "affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." RCW 7.48.130. A private person may have a claim for public nuisance where they can demonstrate that the nuisance is specially injurious to themselves, but not otherwise. RCW 7.48.210. The legislature has also specifically enumerated certain public nuisances, such as leaving an animal carcass out on

property, dumping animal carcasses in a body of water or on a public road, and impeding the passage of a body of water. RCW 7.48.140.

In this matter, we do not address when or whether a government entity may abate a public nuisance or bring a civil action against a person committing a public nuisance. This is beyond the scope of the certified question. Our analysis is limited to whether an action for public nuisance can be brought by a private party in the specified context.

Our case law has recognized that the statutory definition of nuisance is expansive but generally requires that an actionable nuisance "must either injure the property or unreasonably interfere with enjoyment of the property." *Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998) (plurality opinion) (held that company with proper pollution discharge permits is not absolved of liability for damages under a theory of nuisance per se if the discharge injures another's property). We have also stated that actions can be a nuisance if they affect the peace of mind or health of residents and destroy property values of the neighborhood. *Champa v. Wash. Compressed Gas Co.*, 146 Wash. 190, 198, 262 P. 228 (1927) (gas plant leak caused reasonable fear of injury to neighbors' health and property, and depreciated property values, and was thus a private nuisance). In our cases covering nuisance, we have primarily looked at whether the action has interfered in the use and enjoyment of the private property of the plaintiff.

*Animal Legal Def. Fund v. Olympic Game Farm*, No. 101264-1

In a few cases, we expanded our nuisance analysis to interference in public property, such as in *Chelan Basin*. Though that case primarily addressed standing, we also noted that the obstruction of navigable waters at issue was named a nuisance by statute and that private encroachment on public waterways has long been recognized as a nuisance by Washington courts. *Chelan Basin*, 190 Wn.2d at 272. A number of cases address the obstruction of waterways that blocked access to fishing. *See, e.g.*, *Morris v. Graham*, 16 Wash. 343, 47 P. 752 (1897) (a fish trap blocking a channel leading to the Puget Sound was a nuisance). In most of those cases, the legislature had clearly named such obstructions a public nuisance. *See* RCW 77.57.030 (obstructing a stream without including a fishway is a public nuisance); RCW 7.48.140(3) (obstructing, without legal authority, the passage of a waterway is a public nuisance). We relied specifically on legislative enumerations of nuisance, and long-standing nuisances recognized by this court, rather than the analysis of interference in private property.

Our cases have also acknowledged the concept of a nuisance per se: "an act, thing, omission, or use of property which of itself is a nuisance, and hence is not permissible or excusable under any circumstance." *Tiegs*, 135 Wn.2d at 13.

> "When the conditions giving rise to a nuisance are also a violation of statutory prohibition, those conditions constitute a nuisance per se, and the issue of the reasonableness of the defendant's conduct and the weighing of the relative interests of the plaintiff and defendant is precluded because the Legislature has, in effect, already struck the balance in favor of the innocent party."

7

*Moore v. Steve's Outboard Serv.*, 182 Wn.2d 151, 155, 339 P.3d 169 (2014) (internal quotation marks omitted) (quoting *Tiegs v. Boise Cascade Corp.*, 83 Wn. App. 411, 418, 922 P.2d 115 (1996)). While violation of a statute may, under certain circumstances, constitute a public nuisance, simply establishing that a violation has occurred is insufficient. To have a legitimate nuisance per se claim, there must be a showing that a statutory violation has occurred *and* that the action is in fact a nuisance and remains a nuisance under all circumstances. *Moore*, 182 Wn.2d at 156; *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 138, 720 P.2d 818 (1986); *Motor Car Dealers' Ass'n of Seattle v. Fred S. Haines Co.*, 128 Wash. 267, 274, 222 P. 611 (1924). We have also clarified that failure to follow a law does not transform conduct "into a nuisance per se unless the legislature has specifically so declared or the courts of this state have specifically so found." *Moore*, 182 Wn.2d at 154.

As Judge Lasnik has phrased the certified question, no evidence exists demonstrating a legislative intent to declare the alleged statutory violations a nuisance per se. Nearly all of the conduct the legislature has named a public nuisance relates to adverse impact on public land (through improper discharge of pollution or animal carcasses), interference in use and enjoyment of property, or

threats to public health and safety.[2] RCW 7.48.140. None of the nuisances enumerated by the legislature include any reference to the animal cruelty laws, nor is there any declaration in the animal protection statutes naming violations a nuisance.

No suggestion exists in case law that violations of animal protection statutes have been found to be a nuisance either. Our case law has limited nuisances to actions that interfere in the use and enjoyment of property or threaten public health and safety. Again, the phrasing of Judge Lasnik's question specifies that no property infringement has occurred and that there is no threat to public health or safety in this case. Without legislative intent to name an action a nuisance, and no indication that an action has met the definition of nuisance from case law, the answer to the certified question is no. Since Judge Lasnik has already reached this answer in his original ruling on OGF's motion for summary judgment, the legal question before us is whether we will change the existing definition of nuisance and name violations of animal protection laws a nuisance per se.

OGF asserts that we should answer the certified question in the negative. It states that ALDF has failed to show that these statutes have been violated at all and that whether facts support a violation is outside the legal question certified. Even if

---

[2] RCW 7.48.140(6) and .140(8) appear to be the only possible outliers. One enumerated nuisance involves establishing powder magazines near cities, towns, or houses, and the other, production of alcohol for sale in contravention of law.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ALDF could show the laws were violated, it fails to show that a violation

constitutes a public nuisance. The legislature has given no indication that it

intended violation of these statutes to constitute a public nuisance, and ALDF

cannot point to any cases in which this court has determined violations of animal

cruelty or wildlife laws a public nuisance. OGF asks that we follow the logic in

*Moore*, where we said that a violation of a statute for a permit is insufficient to

establish nuisance, even if the legislature has declared such a violation a nuisance

within the statute. 182 Wn.2d at 156.

ALDF argues that we should answer the certified question in the affirmative.

It claims that the evidence shows that OGF has violated Washington's animal

welfare law (RCW 16.52.205 and .207), the Washington Endangered Species Act

(WAC 220-610-010), Washington's rules on possession and display of Roosevelt

elk (WAC 220-450-030), and Washington's law on unlawful taking of endangered

fish or wildlife (RCW 77.15.120). ALDF asserts that for over a century,

Washington's definition of public nuisance has extended broadly beyond

legislatively declared nuisances, impediments to the use and enjoyment of

property, or threats to public health and safety.

ALDF essentially asks that we name a business operating in violation of

wildlife protection and animal cruelty laws a public nuisance per se. It argues that

Washington case law extends public nuisance to include offenses to public decency

*Animal Legal Def. Fund v. Olympic Game Farm*, No. 101264-1

and morals. ALDF adds that even if public nuisance claims are restricted to interferences in property rights, violations of wild animal protection statutes are still a public nuisance because wildlife is the property of the people of the state.

ALDF reaches far back in Washington case law for evidence that we have allowed interferences unrelated to property rights or public health and safety to constitute public nuisances. It points out that the definition of nuisance is expansive and cites language from several cases to demonstrate this. In one case, we said that nuisance is so comprehensive that it has been applied to almost all wrongs, "'anything that worketh hurt, inconvenience, or damage.'" *Thornton v. Dow*, 60 Wash. 622, 633, 111 P. 899 (1910) (quoting *Veazie v. Dwinel*, 50 Me. 479, 481 (1862)), *abrogated by Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 150 P.3d 545 (2007). We have also said that operation of a bawdyhouse was a public nuisance, though there was no evidence of infringement on property rights. *State ex rel. Dow v. Nichols*, 83 Wash. 676, 145 P. 986 (1915). The comparison to these cases is not compelling and does little to support ALDF's argument. In *Thornton*, the court concluded there was no liability for nuisance, even though the definition was broad. In *Nichols*, the court's analysis was based on the action of the defendant being expressly named a public nuisance by an ordinance.

*Animal Legal Def. Fund v. Olympic Game Farm*, No. 101264-1

ALDF also points us to *Kitsap County v. Kev, Inc.,* 106 Wn.2d 135, for the premise that violation of a law is a nuisance when it interferes in the comfort, repose, health, or safety of those in the community through various statutory infractions, again demonstrating that the definition of public nuisance is intended to be broad. It draws comparisons with this case, pointing out that violation of animal protection laws also interferes in the comfort and repose of those in the Sequim community. The comparison fails for two reasons. First, the statutory violation in *Kev* was expressly named a public nuisance by the legislature, which is not the case here. Second, the club in that case committed daily violations of multiple criminal laws, which the court said were so pervasive they constituted a nuisance. Here, no criminal violations are alleged.

Expanding on its original argument, ALDF adds that if we do conclude that nuisance issues must relate to the use and enjoyment of property, OGF is still a nuisance because the wildlife is the property of the people and OGF's actions have interfered in the use and enjoyment of that public property. ALDF cites to cases and law outside of the nuisance context for this concept of wildlife as property. RCW 77.04.012 ("Wildlife, fish, and shellfish are the property of the state."); *Graves v. Dunlap*, 87 Wash. 648, 152 P. 532 (1915) (wild animals belong to the state, but man can claim property rights in the animal if it is captured and controlled); *Dep't of Fisheries v. Gillette*, 27 Wn. App. 815, 820, 621 P.2d 764

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(1980) (fish are property of the people and the State may act for the people in seeking compensation for injury to that property).

Assuming ALDF could show that OGF has endangered wildlife, though there is no evidence in the record that any of the animals at OGF came from the wild, ALDF presents no cases where we have found animals are property in this context. While ALDF cites to some cases that identify wildlife as a public resource, it cites no cases or statutes indicating that the public has a right to use that resource as it sees fit or has any individual, personal property rights in wildlife.

In *Chelan Basin*, we said that in cases where the State has not approved a use or impairment of a state resource, private interference on the *public use* of that resource is a public nuisance. 190 Wn.2d at 272. The public nuisance occurs when the plaintiff is prevented from using the resource that they would otherwise be entitled, absent the interference. The public must impliedly have had use of the resource in order for that right to use to have been infringed. ALDF does not show, through case law or legislative intent, that Washington has established that the public has a right to use wildlife or that it has a right to access private property of a zoo.

ALDF also provides case law from other jurisdictions where courts have allowed public nuisance claims against private zoos for violation of animal cruelty

*Animal Legal Def. Fund v. Olympic Game Farm*, No. 101264-1

laws, but none of those courts applied Washington law. In one case from Wisconsin, the court found that the zoo was a nuisance based on the defendant's default after the zoo owner died, and it granted ALDF a default judgment. No finding of fact established that the zoo was actually a nuisance outside that context. *Animal Legal Def. Fund v. Special Memories Zoo, LLC*, No. 20-C-216, 2021 WL 101121 (E.D. Wis. Jan. 12, 2021).

In a case from Maryland, the court applied that state's definition of public nuisance, an adoption of *Restatement (Second) of Torts § 821B*, which allows a claim if the conduct is merely proscribed by statute, regulation, or ordinance. Maryland's version seems to have no requirement that the conduct actually be a nuisance, as Washington case law requires. *Collins v. Tri-State Zoological Park of W. Md., Inc.*, 514 F. Supp. 3d 773, 781 (D. Md. 2021). The same is true of the case from Iowa. *Kuehl v. Sellner*, 965 N.W.2d 926, at *3-4 (Iowa Ct. App. 2021).

Our cases have established the rule applicable to nuisance claims, limiting claims to property infringement or threats to health and safety. The framing of the certified question recognizes that rule. ALDF essentially asks us to expand the scope of nuisance law. The cases, however, not only establish when and under what circumstances claims exist but are express in limiting claims to those circumstances. The cases are, in a way, self-limiting, as is the statutory framework.

14

*Animal Legal Def. Fund v. Olympic Game Farm*, No. 101264-1

Where the statutory framework and case law do not support a claim, none exists.

We decline to expand the scope of nuisance any further.

## IV. CONCLUSION

We answer the certified question in the negative.

_____
Johnson, J.

WE CONCUR:

_____          _____
                                          Gordon McCloud, J.

_____          _____
Madsen, J.                                Yu, J.

_____          _____
Owens, J.                                 Montoya-Lewis, J.

_____          _____
Stephens, J.                              Okrent, J.P.T.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Animal Legal Defense Fund v. Olympic Game Farm, Inc,* No. 101264-1 (González, C.J., concurring)

No. 101264-1

GONZÁLEZ, C.J. (concurring) — I concur with the majority in result. Under long-settled precedent, a violation of wildlife laws; animal cruelty laws; or the Endangered Species Act of 1973, 16 U.S.C. §§ 1531-1544, without more, is not currently an actionable nuisance in Washington courts. Thus, as the majority concludes, the answer to the certified question is no.

I write separately, however, to stress that "[t]he common law is not static." *State v. Schenectady Chems., Inc.*, 117 Misc. 2d 960, 966, 459 N.Y.S.2d 971 (Sup. Ct. 1983). As our world faces new challenges, "[t]he courts have reacted by expanding the common law to meet the challenge." *Id.* Nuisance law is a paradigmatic example. In its earliest days, nearly a millennium ago, "nuisance" was an injury to property, other than trespass or challenge to a legally recognized interest in the land, for which the law gave a remedy. 9 MICHAEL ALLAN WOLF, POWELL ON REAL PROPERTY § 64.01[1] (2020) ("[T]he defendant who interfered with plaintiff's use and enjoyment of his property by acts done elsewhere than on plaintiff's land became subject (as early as the Twelfth Century) to the assize of nuisance.") This sense of nuisance persists in Washington's law on private

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Animal Legal Defense Fund v. Olympic Game Farm, Inc,* No. 101264-1 (González, C.J., concurring)

nuisances but nuisance now encompasses so much more. *See* RCW 7.48.120, .130, .140, .150.

While the word has taken on a much broader meaning both at law and in its everyday use, legally, a "nuisance" still retains at least one important feature it has had since the days of Plantagenet kings, the Cocom Dynasty, and Genghis Khan: nuisances are injuries for which the law gives a remedy. Not every violation of a law is such an injury. Some violations of the law can be remedied only in court by the state or its agents. *See Moore v. Steve's Outboard Serv.*, 182 Wn.2d 151, 157, 339 P.3d 169 (2014) (holding that the failure to get needed permits would not transform a business into a nuisance). Unless a legal violation has been declared a nuisance by the legislature or the common law, a private party will only rarely be able to maintain a legal action based on it. *Id.* at 154; *see also Tiegs v. Watts*, 135 Wn.2d 1, 13, 954 P.2d 877 (1998) (plurality opinion) ("An actionable nuisance must either injure the property or unreasonably interfere with enjoyment of the property."). Even when something has been declared a public nuisance, a private party can bring an action only if they are specially injured. RCW 7.48.210.

But the world has changed much since the days when King Henry II, Kukulkan, and the Great Khan were young. Now, the private use of land has profound potential to harm our ecosystem and the various species we share it with. *See* Ord. Den. Rev., *Aji P. v. State*, No. 99564-8, at 2-3 (Wash. Oct. 6, 2021)

2

*Animal Legal Defense Fund v. Olympic Game Farm, Inc,* No. 101264-1 (González, C.J., concurring)

(González, C.J., dissenting) [https://perma.cc/AHB2-86DJ]. It may well be time to heed Justice Douglas's call to consider whether those places and things threatened with environmental catastrophe should have standing in court to sue for their own injuries. *See Sierra Club v. Morton*, 405 U.S. 727, 741-42, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) (Douglas, J., dissenting) (citing Christopher D. Stone, *Should Trees Have Standing?—Toward Legal Rights for Natural Objects*, 45 S. CAL. L. REV. 450 (1972)). Thus, I am wary of fully endorsing the majority's sweeping conclusion that "[w]here the statutory framework and case law do not support a claim, none exists." Majority at 14.

The common law evolves. People who would not have had the ability to come to court in the 12th century through much of the 20th century are now recognized as entitled to petition for redress of grievances, to demand equal justice under law, and to be heard. As the law recognizes new injuries it may also be called on to recognize new remedies.

With these observations, I respectfully concur.

González, C.J.

_____
González, C.J.

3